THE PEOPLE *ex rel.* James Smerdon *et al.* Appellants, *vs.* J. H. CREWS *et al.* Appellees.

*Opinion filed June 29, 1910.*

1. DRAINAGE—*two drainage districts cannot occupy same territory at same time.* Drainage districts organized under the Levee and the Farm Drainage acts are both *quasi* corporations, and it is not consistent for two such corporations to occupy the same territory at the same time for the same purpose. (*People* v. *Nibbe,* 150 Ill. 269, and *City of Joliet* v. *Drainage District,* 222 id. 441, explained.)

2. SAME—*power of drainage district to include land in incorporated city or village.* The power of a city or village to divide its territory into drainage districts is merely incidental to the purpose for which the city or village is organized, and hence if it has not organized its territory into a drainage district and assumed jurisdiction over it for drainage purposes, the inclusion of such territory in a district organized under the Levee act or Farm Drain-

age act is not an unlawful devotion of it by another corporation to the same purpose for which the city or village was organized.

3. SAME—*levee district cannot include land wholly in existing district.* Sections 2 and 9 of the Levee act do not authorize a levee district to include within its boundaries lands lying wholly within a legally organized farm drainage district which has been in existence many years and subject such lands to condemnation for right of way for the levee district ditches and to assessment of benefits and damages for the drainage purposes of the district.

APPEAL from the Circuit Court of Wayne county; the Hon. E. E. NEWLIN, Judge, presiding.

H. S. BURGESS, State's Attorney, (E. B. GREEN, THEO. G. RISLEY, and BONHAM & McLIN, of counsel,) for appellants.

CREIGHTON & THOMAS, for appellees.

Mr. JUSTICE FARMER delivered the opinion of the court:

This is an information in the nature of a *quo warranto,* calling upon the respondents, who are appellees here, to show by what warrant and authority they exercise the office, duties and powers of drainage commissioners in Union Drainage District No. 1 of Leech and Massillon townships, Wayne county, Illinois. Appellees filed a plea of justification. Appellants demurred to the plea but the court overruled the demurrer, and appellants electing to stand by the demurrer, judgment was rendered by the circuit court dismissing the information. From that judgment this appeal has been prosecuted.

The information was filed by the State's attorney of Wayne county upon the relation of several persons owning land in said Union Drainage District No. 1. The information alleged that James Smerdon, James Walker and J. G. Melrose, three of the relators, are drainage commissioners of said Union Drainage District No. 1 and that the other relators are owners of land in said district; that said dis-

trict was duly organized May 22, 1890, under the Farm Drainage act, and since that time has continued to be, and still is, exercising all the rights, powers and privileges of a drainage district; that Smerdon, Walker and Melrose are the duly elected, qualified and acting commissioners in and for said drainage district, performing all the functions and exercising the powers of commissioners; that as such commissioners they have full, absolute, sole and complete jurisdiction to classify the lands in said district and assess them with benefits for the purpose of drainage. The information alleges that appellees, J. H. Crews, E. L. Apple and A. H. Potter, neither of whom has at any time been elected or appointed drainage commissioner in and for said drainage district and who are not drainage commissioners therein, for more than sixty days last past have, and still do, unlawfully hold and execute the office of drainage commissioners in the said Union Drainage District No. 1, and without any warrant or right whatever have condemned the right of way over the lands of certain of the relators and classified and assessed benefits against such lands for the purpose of constructing drains and ditches in said district. The information concludes in the usual form.

Appellees sought to justify their action in the exercise of the authority of drainage commissioners over relators' lands in said Union Drainage District No. 1, and to that end filed a plea setting up the authority by which they claimed to be lawfully entitled to do the acts complained of. The plea set up the various steps by which Golden Gate Drainage District was organized in 1908 as a drainage district under what is commonly known as the Levee act, and that appellees are the duly appointed and constituted drainage commissioners of said Golden Gate Drainage District. There is no direct averment in the plea that any of the land embraced in Union Drainage District No. 1 is also included in Golden Gate district. The plea avers that on October 5, 1908, the day set for hearing upon the

confirmation of the commissioners' report and the organi-
zation of Golden Gate Drainage District, relators appeared
before the county court and objected to the confirmation of
the report and the organization of the district as recom-
mended by said report, on the ground that lands belonging
to said relators recommended by the commissioners to be
included in Golden Gate Drainage District were then and
for a long time prior thereto had been included within the
boundaries of Union Drainage District No. 1; that the
then commissioners of Union Drainage District No. 1 also
appeared and objected to the confirmation of the report on
the ground that it was proposed by Golden Gate Drainage
District to construct a ditch entirely within the boundaries
of Union Drainage District No. 1; that neither the court
nor the commissioners of Golden Gate Drainage District
had any right to include in said district lands then included
in Union Drainage District No. 1; that all these objec-
tions were overruled and Golden Gate Drainage District
declared organized, whereby said Golden Gate Drainage
District became and is a body politic and corporate, with
the authority to exercise all the rights, powers and fran-
chises of a drainage district.  The plea further avers that
thereafter the commissioners of Golden Gate Drainage Dis-
trict proceeded to take steps required by law to procure
right of way for ditches and to make assessment of bene-
fits and damages, and that the relators appeared before the
county court and objected to the benefits assessed against
their lands; that a trial was had by a jury and a verdict
and judgment rendered for benefits and damages.  The plea
avers that all the lands of the relators that have been classi-
fied and assessed for the construction of drains and ditches
and over which right of way has been condemned are with-
in the boundaries of Golden Gate Drainage District, and
were classified and assessed and right of way condemned
for the purpose of constructing a system of drainage in the
said Golden Gate Drainage District, and that all the drains

245—21

and ditches of said system are located within the boundaries of said Golden Gate Drainage District.

While the facts are, as stated by counsel on both sides in their briefs, that in the organization of the Golden Gate Drainage District lands were included within its boundaries that were already within the boundaries of Union Drainage District No. 1, this only appears inferentially from the plea, and it may well be questioned whether the plea is sufficient, even if the facts upon which appellees seek to justify their acts would, if well pleaded, be a justification. We are of opinion that if the facts relied upon by appellees as a justification for their acts in exercising authority over lands in Union Drainage District No. 1 had been well pleaded they would not have shown any justification. We are disposed to overlook the informality of the plea and decide the case on its merits.

No question is raised as to the legality of the organization of Union Drainage District No. 1. Appellees contend that notwithstanding that district had been legally organized under the Farm Drainage act and in existence many years prior to the organization of Golden Gate Drainage District, which was organized under the Levee act, it was lawful, in the organization of the latter district, to include within its boundaries lands lying wholly within the former district and subject them to condemnation for right of way for ditches for Golden Gate Drainage District and to the assessment of benefits and damages for drainage purposes of said district. We are unable to agree with this contention. Both districts are *quasi* corporations and both organized for the same purpose, and it is inconsistent for two such corporations to occupy the same territory at the same time for the same purpose.

Appellees rely upon *People* v. *Nibbe,* 150 Ill. 269, and *City of Joliet* v. *Drainage District,* 222 id. 441, where it was held a drainage district might include within its boundaries portions of an incorporated city or village. In those

cases the portions of the municipality included in the drainage district had not been included within any district by the municipal authorities for drainage purposes, and in the *Nibbe case* it was said: "It cannot be doubted that the legislature has the power to authorize the organization of municipal corporations for one purpose, embracing territory situated wholly or partly within the boundaries of another municipal corporation already organized for another purpose."

In *Bishop* v. *People,* 200 Ill. 33, it was sought to include within a drainage district part of the city of Mattoon which was included within one of the drainage districts of said city. Kickapoo creek ran through a portion of the city of Mattoon, and this stream was the principal ditch or outlet sought to be used for the drainage of the drainage district. Prior to the attempted organization of the drainage district the city had expended a large sum of money in straightening and deepening the creek, and this court said: "The city having assumed jurisdiction over that part of the creek or ditch within its corporate limits, that jurisdiction must, for the use to which it has been put by the city, be exclusive."

Where a city or village has not organized territory within its limits into a drainage district and assumed no jurisdiction over it for drainage purposes, its inclusion in a district organized under the Farm Drainage act or Levee act would not be devoting it by another corporation to the same purpose for which the city or village was incorporated. Such municipalities are incorporated for governmental purposes, and their power to divide their territory into drainage districts for drainage purposes is incidental.

Appellees also contend that under sections 2 and 9 of the Levee act, authorizing all lands that will be benefited by a combined system of drainage to be embraced in a drainage district, authority is conferred to include in a district lands already in a district previously organized, if

they will be benefited by the drains and ditches of the proposed district. We think this is a misapprehension of the meaning of the statute. To construe it as appellees contend would lead to absurd results, for if that be the law, then land included in the first district organized might afterwards be included in any number of districts and subjected to the jurisdiction of as many sets of commissioners as there might be districts in which it is included. That no such effect was intended by the legislature is evidenced by the fact that provision was made in sections 51 and 52 of the Levee act for enabling a lower district organized under that act to require an upper district organized under the same act, which empties its ditches into the ditches of or overflows the lower district, to assess the lands of the upper district for benefits received by reason of the ditches of the lower district. In *Gauen* v. *Drainage District,* 131 Ill. 446, and *Chicago, Burlington and Quincy Railway Co.* v. *People,* 212 id. 103, it was held the two drainage acts were separate and distinct acts, under which territory might be organized and incorporated into drainage districts for drainage purposes, and that the districts organized under one act were not subject to the provisions of the other act.

To enable a lower district organized under one act to require a contribution from an upper district organized under another act, the legislature in 1903 adopted an independent act, providing that when a drainage district that has been heretofore or may be hereafter organized under any drainage law "enlarges or improves its ditch, ditches or drains, or extends the outlet or outlets of its ditch, ditches or drains within or beyond its boundaries, in the manner provided by law, so as to benefit the lands or any part thereof, within any drainage district or districts lying above such district, or emptying into such district, such upper district or districts so benefited shall be liable to the lower district so enlarging or repairing its ditch, ditches or drains, or extending its outlet or outlets as aforesaid, for

the just proportion of the cost of the work of said lower district that such upper district or districts will be benefited by the work of such lower district; and the fact that the lower district constructing the work herein mentioned, is organized and operating under a different drainage act or drainage law of this State from that under which said upper district or districts, or district or districts emptying into said lower district is or was organized or is operating, shall not preclude a recovery hereunder by such lower district." Other sections of the act provide the method for ascertaining the amount that the upper district should contribute if the same cannot be agreed upon between the commissioners of the respective districts. (Hurd's Stat. 1908, p. 879.)

It is evident the ditches or drains of a lower district may be of benefit to lands in a district adjoining and immediately above it, and to meet that condition sections 51 and 52 of the Levee act were adopted. When it was held that act and the Farm Drainage act were independent acts and the provisions of one could not be applied to a district organized under the provisions of the other the act of 1903 was adopted, giving the remedy to the lower district even though it and the upper district were organized under different acts. This legislation would hardly have been thought necessary by the legislature if it had been intended that one district might include within its boundaries and subject to the jurisdiction of its commissioners lands already embraced in a district previously organized. Union Drainage District No. 1 was organized eighteen years before Golden Gate Drainage District was organized, and we are warranted in the presumption that its ditches and drains had been constructed and that the lands within its boundaries were assessed to pay for the same, and we find no warrant of law for taking them into another district under the control and management of another set of commissioners, and subjecting them to be again assessed for

benefits by the commissioners of the newly organized district. It can readily be seen that to do so might be productive of injustice and would necessarily lead to conflict and confusion.

We are of opinion the county court was without jurisdiction to include within the boundaries of Golden Gate Drainage District lands of the relators lying wholly within Union Drainage District No. 1, and that the circuit court erred in overruling appellants' demurrer to appellees' plea. The judgment of the circuit court is therefore reversed and the cause remanded, with, directions to sustain the demurrer to the plea.

*Reversed and remanded, with directions.*