THE PEOPLE *ex rel.* John J. Wies, County Collector, Appellee, *vs.* WALTER G. BOWMAN, Appellant.

*Opinion filed December 8, 1910*

1. TAXES—*existence and authority of de facto sanitary district cannot be questioned in a proceeding to collect a tax levied by it.* Where there has been an attempt to organize a sanitary district under the statute and a user of the franchises of such a district, the existence of the *de facto* district and its authority to exercise the powers conferred by the statute cannot be questioned in a proceeding to collect taxes levied by such *de facto* district.

2. STATUTES—*it is competent to go behind printed or enrolled act to show that it was not constitutionally passed.* It is competent to go behind the printed statute book or the enrolled act to show by the journal of either branch of the legislature that the act was not passed in the manner prescribed by the constitution, and in such case the journals must be accepted as containing a true record of the proceedings of the legislative body.

3. SAME—*silence of journal as to a matter required to be shown is evidence of its non-existence.* Under the provision of the constitution requiring the vote upon the final passage of all bills to be

by yeas and nays and to be entered in the journal, the fact that the journal of the senate shows the final passage of a bill by a specified number of yeas but is silent as to nays is evidence that there were no negative votes cast on such final passage.

4. SAME—*journals must show, on their face, a compliance with every requirement of the constitution.* The journals of the senate and house of representatives must show, on their face, a compliance with every requirement of the constitution, from the introduction of a bill to its final passage, otherwise the bill will not become a law.

5. CONSTITUTIONAL LAW—*subjects dealt with by the Sanitary District act are in harmony with and embraced in its title.* The subjects of levees, drainage, the taking control of other drainage districts and the maintenance of a police force, which are dealt with in Sanitary District act of 1907, are reasonably connected with the subject mentioned in the title and are embraced in such title.

6. SAME—*Sanitary District act not unconstitutional because it makes no provision for special assessment.* The fact that the Sanitary District act makes no provision for special assessment but only provides for the levy of a general tax does not render the act unconstitutional, as the work that such a district performs in furnishing needed protection to the inhabitants of such district is distinct from that of a drainage district for agricultural purposes, and it was within the power of the legislature to authorize the organization of such districts.

7. SAME—*drainage districts and sanitary districts are not within constitutional prohibition against special laws.* Neither drainage districts nor sanitary districts are within the prohibition of section 22 of article 4 of the constitution, relating to the passage of local or special laws.

8. SAME—*legislature may insert in an act a statement of what it is intended to express.* It is not a violation of the constitutional power of courts to construe statutes, for the legislature to insert in an act a statement of what it is intended to express.

9. SAME—*legislature has power to provide manner of electing sanitary district trustees.* In authorizing the creation of sanitary districts the legislature has power to declare what officers such districts shall have, and how, when and by whom they shall be elected or appointed; and it was competent for the legislature to provide that the trustees should be elected in accordance with the requirements of the statute in reference to the election of officers in newly organized cities, instead of under the general Ballot act or under the supervision of city election commissioners.

10. SAME—*sanitary districts and drainage districts are creatures of the legislature.* Sanitary districts and drainage districts are

creatures of the legislature and acquire no contract rights by their incorporation, and the legislature has the right at all times to regulate and control them, their franchises and their funds, and to alter, modify or abolish them at pleasure, provided their property is not diverted from the uses for which it was given or purchased.

11. SAME—*legislature is not limited in the creation of corporate authorities.* The constitution contains no prohibition against the creation by the legislature of every description of corporate authorities, and the endowment of them, when created, with all the faculties and attributes of other pre-existing corporate authorities.

12. SAME—*power of the legislature to authorize organization of new municipal corporations with taxing powers.* In exercising its power to authorize the organization of municipal corporations with powers of taxation the legislature is not limited by the boundaries of pre-existing municipal corporations nor compelled to adopt their corporate authorities.

13. SAME—*section 24 of Sanitary District act is not unconstitutional.* Section 24 of the Sanitary District act is not unconstitutional because it requires such district to take and pay for the levees, drains and ditches of drainage districts within its limits, as such section is intended to provide a method of harmonizing the action of the two classes of corporations or of acquiring the works of the drainage districts by the sanitary district, and is within the power of the legislature.

14. SAME—*legislature may authorize municipal corporations in same territory to co-operate.* While two municipal corporations cannot have jurisdiction and control, at one time, of the same territory for the same purposes, yet the legislature may authorize the formation of two municipal corporations in the same territory at the same time for different purposes, and authorize them to co-operate, so far as co-operation may be consistent or desirable, in order to accomplish their respective purposes.

15. SANITARY DISTRICTS—*section 24 does not require district to pay for the levees, drains and ditches of all districts.* Section 24 of the Sanitary District act does not require a sanitary district to take and pay for the levees, drains and ditches of all drainage districts within its limits, but only where such levees, drains and ditches are conducive to sanitary purposes, thus recognizing that the purposes of the two classes of districts are different.

APPEAL from the County Court of St. Clair county; the Hon. FRANK PERRIN, Judge, presiding.

TURNER & HOLDER, J. M. FREELS, and WHITNEL, BROWNING & GILLESPIE, for appellant.

F. J. TECKLENBURG, State's Attorney, (A. B. DAVIS, J. E. HAMLIN, and DAN McGLYNN, of counsel,) for appellee.

Mr. JUSTICE DUNN delivered the opinion of the court:

This appeal is from a judgment recovered against the appellant's property for delinquent taxes levied by the East Side Levee and Sanitary District, claiming to be a municipal corporation organized under the act of May 17, 1907, entitled "An act to create sanitary districts in certain localities and to drain and protect the same from overflow for sanitary purposes." Hurd's Stat. 1909, p. 923.

It will not be necessary to mention in detail the numerous objections filed in the county court. Those urged here resolve themselves into an attack upon the existence of the East Side Levee and Sanitary District because, first, the act under which it purports to be organized was not passed in a constitutional manner by the legislature; second, the act is unconstitutional; third, the proceedings by which the organization of the district is claimed to have been accomplished were so irregular that the county judge and the board of commissioners provided for by the act never obtained jurisdiction in the matter, the elections held were void and no organization was or could be effected by those proceedings.

In regard to the last class of objections it may be said that they cannot be considered in a case of the character of this. If it be conceded that the act is valid, then the regularity of the proceedings by which the organization of a municipal corporation is attempted cannot be drawn in question in a proceeding to collect taxes levied by such corporation, even though the objection goes to the jurisdiction of the tribunal through whose agency the organization is effected. It is not controverted that a petition was presented to the county judge of St. Clair county to submit to

a vote the question whether certain territory should be organized under the act in question as a sanitary district; that he called to his assistance a circuit judge and the county judge of Madison county; that the board thus constituted fixed the boundaries of the proposed district; that at an election called for the purpose a majority of votes was cast for the sanitary district; that trustees were elected at a later election, and that the East Side Levee and Sanitary District has ever since assumed to be lawfully incorporated and has exercised the privileges and franchises of a municipal corporation. An attempt was thus made to follow each step required by the statute. Section 3 of the act provides that if a majority of the votes cast shall be in favor of the incorporation of the proposed sanitary district, the district shall thenceforth be deemed an organized sanitary district under the act. By these proceedings a corporation was professedly brought into existence with all the powers conferred by statute. There was a law authorizing the organization of a sanitary district, there was an attempted organization and a user of the franchises of such a district. There being thus an acting *de facto* corporation, it is clearly not admissible in this form of action to question the existence of the corporation or its authority to exercise the powers conferred by statute upon such corporations. *Blake* v. *People,* 109 Ill. 504; *Trumbo* v. *People,* 75 id. 561; *People* v. *Newberry,* 87 id. 41; *Osborn* v. *People,* 103 id. 224; *People* v. *Dyer,* 205 id. 575; *People* v. *Pederson,* 220 id. 554.

For the same reason that the regularity of the incorporation cannot be inquired into, the evidence in regard to the sanitary purposes of Drainage District No. 1 and of the Outlet Sewer District of East St. Louis, and in regard to the sanitary conditions in and around the city of East St. Louis, was properly rejected. Such evidence merely went to the legality of the organization and was incompetent for that reason.

The journal of the senate of the Forty-fifth General Assembly was produced in evidence for the purpose of showing that the act was not passed in the senate in the manner required by the constitution. The journal shows that the bill was read a third time, " and the question being, 'Shall this bill pass?' it was decided in the affirmative by the following vote: Yeas 34. The following voted in the affirmative," followed by the names of thirty-four senators. The constitution requires the vote upon the final passage of all bills to be by yeas and nays and to be entered upon the journal. The objection made is that the nay votes are not entered upon the journal and it is not expressly stated that there were none. It is competent to go behind the printed statute book and the enrolled act and to show by the journal of either branch of the legislature that the act was not passed in the mode prescribed by the constitution. The journals of the senate and house of representatives must be accepted as containing a true record of the proceedings of those bodies. They must show on their face a compliance with every requirement of the constitution, from the introduction of a bill until its final passage, or it will not become a law. The silence of the journal as to anything required to be shown is evidence of its non-existence. (*Spangler* v. *Jacoby*, 14 Ill. 297; *People* v. *Starne*, 35 id. 121; *Ryan* v. *Lynch*, 68 id. 160.) If the journal fails to show anything which, if it had occurred, should have appeared on the journal, the failure of the journal to show it is evidence that it did not occur. If there had been any negative votes upon the passage of the bill in question they should have been recorded in the journal. The fact that none are recorded is evidence that there were none. The effect of the record in the journal is that the bill was passed by a vote of thirty-four yeas and no nays.

It is insisted that the act violates the constitutional requirement that no act shall embrace more than one subject, which shall be expressed in the title. It is said that

the act includes the subjects of levees, drainage, the taking control of other drainage districts and the maintenance of a police force. All these subjects are dealt with in the act but only in a manner subsidiary to the general purpose of the act, which is indicated by its title. The legislation is not incongruous but is reasonably connected with the subject mentioned in the title. An act may contain many provisions and details for the accomplishment of the legislative purpose, and if they legitimately tend to effectuate that object the act is not contrary to the constitutional provision. (*People* v. *McBride,* 234 Ill. 146; *Meul* v. *People,* 198 id. 258; *Town of Manchester* v. *People,* 178 id. 285.) None of the objects mentioned can be said to be foreign to the purpose of providing for the public health and safety by the prevention of overflow, the inauguration of a general system of drainage for sanitary purposes, and making provision for the protection of the levees, ditches and other improvements which might be constructed.

It is contended that the act has for its main purpose the drainage of lands; that the sanitary purposes are merely incidental; that the drainage designed by the act to be accomplished can only be done, under the constitution, by special assessment, and that, since the act makes no provision for a special assessment but provides only for the levy of a general tax, it is unconstitutional. The act purports, in its title, to authorize the creation of sanitary districts for sanitary purposes only. It provides for their organization only in contiguous territory within two counties, including two or more incorporated cities and having a population of not less than 25,000, which is subject to overflow from a river or tributary thereof, and in which the maintenance of one or more levees for protection against overflow and a new or improved outlet for drainage will conduce to the preservation of the public health and safety. The necessity to the public health of protection against the after-effects of great floods under the circumstances indi-

cated is manifest, as well as the difficulty of obtaining the concert of action necessary to secure such protection. We may take notice that at the time this act was passed East St. Louis was a city whose population exceeded 50,000; that other cities existed within the boundaries of the East Side Levee and Sanitary District, and that the entire population, urban and rural, approached 100,000. We may also recognize the recurrent floods to which that territory has been subject, with the attendant dangers, and the necessity for protection against them, both in the city and country. That it was competent for the legislature to authorize the formation of a municipal corporation to have charge of the work of devising, constructing and maintaining a system of levees and drainage for the purpose of furnishing the protection needed is undeniable, and it is obvious that such a work is distinct from that of drainage for agricultural purposes.

It is further objected that if not a drainage act, subject to the provisions of section 31 of article 4 of the constitution, the act is obnoxious to section 22 of article 4. That section prohibits the legislature from passing local or special laws in certain enumerated cases. Counsel have not mentioned the particular prohibition which applies to this case and we have not discovered it. The act, on its face, does not purport to be local or special. We do not decide, and have not considered, whether it is so or not. If it be conceded that it is local or special, neither drainage districts nor sanitary districts are within the prohibition of the section of the constitution referred to. *Owners of Lands* v. *People,* 113 Ill. 296; *Wilson* v. *Board of Trustees,* 133 id. 443.

Section 28 of the act is as follows: "The provisions of this act shall never be construed as authorizing any levee or drainage system for agricultural or mining purposes, but shall be liberally construed for the prevention of overflows and drainage of lands for sanitary purposes,

within any sanitary district organized hereunder: *Provided,* nothing herein contained shall be held to constitute a contract between the State and any municipal corporation organized hereunder, or to prevent the alteration, amendment or repeal of this act, or of any amendment thereof, at any time hereafter." It is contended that this section violates article 3 of the constitution because it interferes with the right of the courts to construe the statute. It is certainly not unconstitutional for the legislature to insert in an act a statement of what it is intended to express.

It is urged that the act is unconstitutional because it provides for a special election that is local. The legislature, in authorizing the district to be created, had the right to declare what officers should manage its affairs, and how, when and by whom they should be elected or appointed, and it may change the mode of appointment at its pleasure. (*People* v. *Nelson,* 133 Ill. 565; *Plummer* v. *Yost,* 144 id. 68; *People* v. *Olson,* 245 id. 288.) It was not necessary that the trustees should be elected at the same time or in the same manner as the officers of other municipalities are elected. It was competent for the legislature to determine that question and direct that the officers of this particular class of municipal corporations should be elected, not in accordance with the provisions of the general Ballot act or under the supervision of city election commissioners, but in accordance with the requirements of the statute in reference to the election of officers in newly organized cities, as provided in section 8 of chapter 24 of the Revised Statutes, and this was done.

It is insisted that section 24 of the act is unconstitutional because it requires any sanitary district organized under the act to take and pay for the levees, drains and ditches of any drainage district included within the limits of such sanitary district, and that the remainder of the act cannot be sustained without that section. The section is as follows: "In case any sanitary district organized here-

under, shall include within its limits, in whole or in part, any drainage district or districts organized under the laws of this State having levees, drains or ditches which are conducive to sanitary purposes, such drainage district or districts shall have paid and reimbursed to it or them, upon such terms as may be agreed upon by its or their corporate authorities and the board of trustees of said sanitary district, the reasonable cost or value of such levee, drains or ditches, which valuation shall in no case be fixed at less than any unpaid indebtedness incurred by such district or districts in constructing the same. Upon such payment being made, the sanitary district shall have the right to appropriate and use such levees, drains or ditches, or any part thereof, as it may desire, for or in connection with any improvements authorized by this act, and for or in connection with the purposes for which said sanitary district is organized: *Provided,* no such levee, drain or ditch shall be destroyed, removed or otherwise so used as to impair its usefulness for the purposes for which the same was constructed, without the consent of the corporate authorities of such drainage district. In case the board of trustees of said sanitary district and the corporate authorities of any such drainage district shall be unable to agree upon the compensation to be paid or reimbursed to such drainage district, the same may be ascertained and enforced by any proper proceeding in any court of competent jurisdiction."

Counsel for appellant do not indicate the particular provision of the constitution which this section is supposed to violate. Their position is, that it requires the sanitary district to purchase and pay for the levees, drains or ditches of all drainage districts previously organized in the territory of the sanitary district, and to take charge of the local drainage, to expend money raised by general taxation in paying for improvements which have been constructed by special assessment and which specially benefit the property assessed, and to expend money raised by general taxation

in paying the whole indebtedness of a drainage district of which only a part is within the limits of the sanitary district. If this position is correct it does not follow that the legislature has exceeded its constitutional power. The sanitary district and the drainage districts are all municipal corporations and creatures of the legislature. By their incorporation they acquire no contract rights. They are merely parts of the machinery employed in carrying on the affairs of the State. They exist only for public purposes, and possess no powers except such as are given them for public or political purposes. The legislature has the right at all times to regulate and control them, their franchises and their funds, and to alter, modify or abolish them at pleasure, so that their property is not diverted from the uses and objects for which it was given or purchased. (*Bush* v. *Shipman,* 4 Scam. 186; *County of Richland* v. *County of Lawrence,* 12 Ill. 1; *Trustees of Schools* v. *Tatman,* 13 id. 27.) The constitution contains no prohibition against the creation by the legislature of every conceivable description of corporate authorities, and the endowment of them, when created, with all the faculties and attributes of other pre-existing corporate authorities. (*People* v. *Salomon,* 51 Ill. 37.) Nor is the General Assembly, in exercising its power to authorize the organization of municipal corporations with powers of taxation for corporate purposes, limited by the boundaries of pre-existing corporations or compelled to adopt their corporate authorities. (*Owners of Lands* v. *People, supra; Butz* v. *Kerr,* 123 Ill. 659.) The burden of constructing and maintaining highways or bridges and the support of paupers may be imposed upon certain classes of municipal corporations and afterward changed and imposed upon others, within the discretion of the General Assembly. (*Seagraves* v. *City of Alton,* 13 Ill. 366; *Town of Fox* v. *Town of Kendall,* 97 id. 72; *Sangamon County* v. *City of Springfield,* 63 id. 66; *Logan County* v. *City of Lincoln,* 81 id. 156; *Board of*

*Supervisors* v. *People,* 110 id. 511.) "And, in general, in
the absence of constitutional restraint, it has been held that
the General Assembly may create, annul and change mu-
nicipal corporations, and control and dispose of their prop-
erty as to it shall seem most in consonance with the public
welfare." *Wilson* v. *Board of Trustees, supra.*

While two municipal corporations cannot have juris-
diction and control, at one time, of the same territory for
the same purpose, no constitutional objection exists to the
power of the legislature to authorize the formation of two
municipal corporations in the same territory at the same
time for different purposes, and to authorize them to co-
operate, so far as co-operation may be consistent with or
desirable, for the accomplishment of their respective pur-
poses. The legislature has seen fit to authorize the organi-
zation of a sanitary district which may include drainage
districts already organized, and we are aware of no consti-
tutional prohibition of such action. Section 24 is intended
to provide a method of harmonizing the action of the two
classes of corporations or of acquiring the works of the
drainage district by the sanitary district. No limitation
exists, within our knowledge, upon the power of the legis-
lature to compel the sanitary district to take and pay for
the levees and drains within its territory, or to compel the
drainage districts to surrender such levees and drains to
the sanitary district, so long as the use of such levees and
drains for the purpose for which they were constructed is
not impaired.

We do not, however, agree with counsel that the sec-
tion in question requires the sanitary district to take and
pay for the levees, drains and ditches of all drainage dis-
tricts within its limits. It was intended only to confer
upon the sanitary district authority to acquire the levees,
drains and ditches of the drainage district when conducive
to sanitary purposes. It recognizes that the purposes of
the two classes of districts are different. The works of

the drainage district may or they may not be conducive to sanitary purposes. They may or may not be capable of use for the purposes of the sanitary district without impairing their usefulness for the purpose for which they were constructed. These circumstances are for the consideration of the sanitary district, and it may, if deemed advisable, take the levees, drains and ditches of the drainage district, in which case the drainage district shall be paid the cost or value thereof, but in no case less than any unpaid indebtedness of the district incurred in constructing them. It is true that the funds of the sanitary district are raised by general taxation, and if used in the payment of the cost of the levees, drains and ditches appropriated, will go to pay for improvements paid for by special assessment, and may, in part, relieve lands outside the district of an indebtedness incurred in their construction. If the levees, drains and ditches are appropriated for the use of the sanitary district the sanitary district ought to pay for them, and the property within the sanitary district which had been specially assessed will pay its proportionate amount of the general tax which is assessed in the sanitary district. If the part of the drainage district outside of the general district is relieved of its share of the indebtedness without paying any of the general tax, the sanitary district is not required to take and pay for the levees, drains and ditches if it does not deem it for its advantage to do so.

An act was passed in 1909 (Hurd's Stat. 1909, p. 929,) for the purpose of curing some supposed defects in the elections by which the sanitary district was organized and the trustees were chosen, and this act is also brought in question by appellant. It is, however, not necessary to consider it, for it concerns only the regularity of the organization of the sanitary district, and that issue, as has been seen, can not be raised in this proceeding.

The judgment of the county court will be affirmed.

*Judgment affirmed.*