(No. 27863.—

The People *ex rel.* A. H. Greening, State's Attorney, Appellant, *vs.* H. B. Bartholf *et al.,* Appellees.

*Opinion filed November 22, 1944.*

446

THOMPSON, J., dissenting.

A. H. Greening, State's Attorney, Thomas W. Hoopes, S. Phil Hutchison, A. M. Fitzgerald, and Walter T. Day, all of Springfield, for appellant.

Hugh J. Dobbs, Gillespie, Burke & Gillespie, and Lawrence Hoff, all of Springfield, for appellees.

Mr. Justice Murphy delivered the opinion of the court:

The State's Attorney of Sangamon county, at the request of taxpayers, instituted this suit in the circuit court of said county to require each defendant to show by what authority he has the right to act as commissioner of the Springfield Airport Authority, a municipal corporation, and to act collectively with the others to exercise powers as its governing body. Defendants pleaded in justification, setting up that the authority was organized pursuant to an act entitled "An act in relation to municipal airport authorities" approved May 21, 1943, (Ill. Rev. Stat. 1943, chap. 15½, par. 49 *et seq.*) and pleaded facts showing the steps that had been taken to comply with the requirements of the act leading to the organization of the authority and the selection of defendants as its commissioners. Plaintiff moved to strike the answer and in support thereof set forth numerous objections challenging the constitutionality of the act and various sections thereof.

The cause was submitted on the complaint, answer and motion to strike. The trial court held section 20 (par. 68) unconstitutional but concluded that it was separable from the remainder of the act and its invalidity did not affect the other sections. A judgment was entered sustaining defendants' right to the office of commissioners of said authority. This appeal followed. It is not claimed that the statute was not followed in effecting the organization or the appointment of defendants as its commissioners. The contentions made all relate to the validity of the act or some of its sections.

Parts of defendants' answer and numerous exhibits were evidently attached for the purpose of presenting a picture of the development of aviation, its present status and future possibilities. It will not be necessary to refer to such facts in this opinion for we will assume that the permanency of aviation as a means of transportation and as an arm of our national defense is well established, and that its future development may surpass all that is contained in the prophetic vision set forth in the answer.

The act provides a means for creating a municipal corporation which has for its purpose (section 7) "the establishment and continued maintenance and operation of safe, adequate and necessary airports and airport facilities within the State." The powers conferred by the act upon such a municipality are such as might be considered reasonably necessary to give effect to the purpose for which the municipality was created. In general the power is given it to acquire land in fee or by lease for purposes of a site for an airport and fix tolls, rentals or fees for the same. It may lay out, establish and maintain approaches to the airport and is given the power of eminent domain which it may employ in acquiring a site for an airport and in removing obstructions on land adjoining the airport which would interfere with the flying of airplanes to and from the airport. To finance such purposes it may levy an annual tax, and under certain conditions may borrow money and issue bonds or certificates of indebtedness, the same to be subject however to constitutional and statutory limitations. It may adopt such ordinances, rules and regulations as may be necessary to the management of the airport and the protection of its property, and in so doing has express authorization to exercise certain police powers. Sec. 8, par. 56.

The first contention made is that the act in its entirety violates the due-process clauses of the Federal and State

constitutions, in that the act gives an airport authority power to levy taxes for private purposes. If it should be determined that the establishment of an airport for the purposes stated in the act, and under circumstances expressed therein, was for a private rather than a public purpose, then the objection would have to be sustained. It is well settled that the taking of the taxpayers' money for a private purpose is a violation of the due-process clauses of the State and Federal constitutions. *Chicago Motor Club* v. *Kinney*, 329 Ill. 120; *Robbins* v. *Kadyk*, 312 Ill. 290; *Citizens Savings & Loan* v. *Topeka*, 20 Wall. 655, 22 L. ed. 455.

Legislative enactments relating to aviation have increased in number in proportion to the development of traffic by air. In this State the first statute was adopted in 1928. (Laws of 1928, p. 85.) It was entitled: "An act to regulate aviation" and consisted of five sections. Since then the original act has been rewritten and extended and several acts have been added. All such legislation has the common primary purpose of regulating traffic by air. It is regulated to the extent that aerial traffic moves on regular schedules and along airways which are marked with the precision and accuracy of a railroad right of way. The coming and going of planes along such airways is a subject of control and only those who can pass a test as to knowledge and experience of aviation are licensed to fly planes.

Such statutes and regulatory measures adopt the existence of air traffic as an established fact. They are not adopted for the purpose of promoting aviation or in the advancement of private interest engaged in its maintenance and development. Such legislation assumes that travel by air is an established means of transportation and that the public welfare and safety of the people requires its regulation.

The legislature in adopting the act in question undertook to provide for the establishment of a municipality acting as an agency of State government and to confer on it the power to provide safe and adequate airports to better regulate the aerial traffic in the locality where the airport is to be located. Such an airport, when established, would belong to the public and the public would have access to it, subject to the reasonable rules and regulations that might be necessary for its proper management and operation. Power exercised in such regulation may be likened to the power which a State in its sovereign capacity exercises in the control of transportation generally within the State.

There is no doubt but that the legislature, in the exercise of its police power, may consider the problems and risks that arise in connection with aviation and provide legislation for the securing of a greater degree of safety to those engaged in such method of transportation and to those on the land.

It has been said that laws which tend to promote the public comfort, health, safety or general welfare of society are a proper exercise of the police power of the State. (*Fenske Bros., Inc.* v. *Upholsterer's International Union,* 358 Ill. 239; *Massie* v. *Cessna,* 239 Ill. 352.) Such power is elastic and capable of expansion to meet changing conditions. *People* v. *Rosehill Cemetery,* 334 Ill. 555; *Public Utilities Com.* v. *City of Quincy,* 290 Ill. 360.

In *Fenske Bros., Inc.* v. *Upholsterer's International Union,* 358 Ill. 239, it was said: "In the exercise of this power the legislature may enact laws regulating, restraining or prohibiting anything harmful to the welfare of the people even though such regulation, restraint or prohibition interferes with the liberty or property of an individual. Neither the fourteenth amendment to the Federal constitution nor any provision of the constitution of this

State was designed to interfere with the police power to enact and enforce laws for the protection of the health, peace, morals or general welfare of the people. *Powell v. Pennsylvania,* 127 U. S. 678, 31 L. ed. 253; *People v. Anderson,* 355 Ill. 289; *Town of Cheney's Grove v. Van Scoyoc,* 357 Ill. 52."

Under our form of government the police power is an attribute of sovereignty of the State. In the first instance it is for the legislature to determine when conditions exist which call for the exercise of the power, and when it has acted, the presumption arises that the act is a valid exercise of such power. (*People v. Stokes,* 281 Ill. 159; *People v. McBride,* 234 Ill. 146.) The legislature not only determines when there shall be an exercise of the power but it has the right in matters of local concern to delegate the execution of the power to a municipality, such as a city or village, or to authorize the organization of a new municipality and vest it with the authority necessary to the execution of the power. *Perkins v. Comrs. of Cook Co.* 271 Ill. 449; *People ex rel. Wies v. Bowman,* 247 Ill. 276.

In considering the question whether an airport authority is created for private or public use, the distinction must be kept in mind between the powers that may be exercised and which are within the purview of the act, and, the powers that the authority may undertake to exercise but which are beyond the scope of the act. The possibility that an authority may exceed its powers and devote the facilities of its airport to private use, thereby departing from the plain language of the statute, does not furnish a basis for holding the act unconstitutional in this proceeding.

We conclude that the basic purpose of the act was to make for safety in aviation and that legislation enacted for such purpose is in the interest of the public welfare

and a proper exercise of the police power, and is therefore a matter of public concern.

We come, now, to a more detailed analysis of the method adopted for the organization of an airport authority. Appellant contends that certain provisions of the act which relate to the organization of an authority violate constitutional provisions. The creation of an authority is initiated by the filing of a petition with the county clerk of the county in which the authority or the greater part thereof is to be located, and such petition is to be signed by 500 or more electors residing within the area to be incorporated within the authority. The petition is to contain a description of the area to be included in the authority. It may be formed to include any contiguous area and may be wholly without the area of an existing municipality or wholly within, or composed of lands, a part within and a part without the territorial area of any existing municipality. If a part or the whole of the territorial area of any existing municipality, such as a city or village, is included within the boundaries of the proposed authority, then the statute directs that notice of the filing of the petition shall be given to the presiding officer of any such municipality. Such officer brings the contents of the notice to the attention of the governing body of his municipality and such body determines whether it shall approve the organization of the proposed airport authority and whether it will become a sponsor of such authority. The right of an existing municipality to approve or sponsor an authority is dependent on whether a part or the whole of its territorial area is within such proposed authority. There may be as many approving municipalities or sponsors as there are municipalities that have a part or the whole of its territorial area within the boundaries of the territory.

The third subparagraph of paragraph 2 of section 2 (par. 50) provides: "In case the governing body of any such municipality approves the establishment of an airport

authority, either with or without electing to become a sponsor thereof, such action shall take the form of an ordinance and such municipality may attach such conditions or qualifications to its approval or to its election to sponsor any such authority as may be specifically set forth in such ordinance." A transcript of the proceedings of the action thus taken by the governing body of such sponsoring municiplity and its election to be a sponsor are certified and filed with the county clerk of the county in which the proceeding for the organization of the authority is pending. The statute provides for the calling of an election and notice of the same. At the election the legal voters of the territorial area described in the petition vote upon the question: "Shall 'An Act in relation to Municipal Airport Authorities' effective .... day of ........ be adopted, and the ........ Airport Authority be established?" The form of ballot prescribed by the statute is "Yes" or "No" on the foregoing question.

If a majority of the votes cast at the election shall be in the affirmative, then paragraph 4 of section 2 provides that the inhabitants of the territory described in the petition "shall be deemed to have accepted the provisions of this act and the same shall thenceforth be deemed an organized Airport Authority under this act, * * *." When thus organized, the authority is to be governed by a board of commissioners consisting of five members (unless increased to meet requirements of the act where there is more than one sponsoring municipality.)

Section 3 directs that all commissioners shall be appointed. The county judge of the county where the proceeding is pending shall appoint one from that part of the territory located outside the territorial area of the sponsoring municipalities. The mayor or presiding officer of the sponsoring municipality or municipalities whose areas are in whole or in part within the authority, appoints the other four commissioners. In this case the city of

Springfield, the area of which was all included within the authority, appointed four of the defendants as commissioners. The statute does not direct of what part of the area of the sponsoring municipality the commissioners shall be residents. If only a part of the territorial area of a sponsoring municipality is included within the authority, then there is nothing in the statute that would prevent the mayor or presiding officer from naming commissioners who were residents of that part of the territorial area of the sponsoring municipality which was without the territorial area of the authority.

The statute defines a sponsor to mean any municipality which sponsors the authority. It contains a definition of a cosponsor to mean a municipality which is participating with other municipalities in sponsoring the establishment of an authority. It does not, either by express language or by implication, define what acts of a municipality will constitute a sponsorship. The act is vague, indefinite and uncertain in that respect. There is great latitude as to what the governing body of a sponsor may consider to be its obligation or duty in sponsoring an authority. The only duty imposed on a sponsor is that section 15 (par. 63) directs that a sponsoring authority shall be liable for the court costs, recording fees and expenses of the election incident to the organization of the authority in addition to any expenses it incurred on its own behalf in determining whether it would become a sponsor.

It will be noted that the part of the third subparagraph of paragraph 2 of section 2 which authorizes municipalities to determine whether they shall become a sponsor provides that such municipality shall determine by ordinance the "conditions or qualifications" to its approval of the authority or to its election to sponsor it and shall incorporate such conditions and qualifications in an ordinance. One of the advantages a sponsoring municipality obtains is the right to have its presiding officer name a majority

of the governing board of commissioners of the authority. It is not fanciful reasoning to say that such a provision gives to the sponsoring municipality the right indirectly to control the policies and management of the authority. The statute (section 8) undertakes to declare against such an implication by declaring that the authority "shall constitute a separate municipal corporation and body politic, separate and apart from any other municipality, the State of Illinois or any other governmental agency," but in practical application of the statute it opens the way for interlocking of governmental bodies and control of the authority by the sponsoring municipality. Section 6 prescribes the qualifications of the commissioners and directs "that officers, employees or representatives of any state or Federal agency or of any municipality shall not be disqualified from membership on such board by reason of such office, employment or representation." We will not discuss the constitutional question directed at this provision but merely refer to it for the purpose of emphasizing the control the sponsoring municipality may indirectly exercise over the authority.

The sponsoring municipality, acting *ex parte,* fixes the conditions and qualifications upon which it will give the authority its approval or become its sponsor. The sponsoring municipality is an agency of government and the conditions and qualifications it may prescribe must be judged by the scope of its powers. There is small likelihood that a sponsoring municipality would impose the terms that it pay a part of the annual expense of the maintenance of the airport and if it did there would be the further question as to the legality of such act. It must be assumed that the sponsoring municipality will act within its corporate powers and that the terms upon which it will sponsor an authority will be in reference to matters within its powers. It will be assumed it owns and holds real estate and personal property. Section 15 recognizes such

fact and authorizes a sponsor to deal with the authority in reference to such property. It directs "Each sponsoring municipality may contribute to any such Airport Authority after its organization in the form of material, services, money, office space and the use of equipment and other physical property, to the extent same is available and unpledged, unallocated or not otherwise specifically devoted to other uses and which such municipality is not otherwise prohibited by law from contributing to any such Airport Authority." The statute does not state whether the conditions and qualifications upon which the municipality may become a sponsor are in reference to the property referred to in section 15, or whether they may be in reference to the location of the airport or in reference to many other matters concerning the establishment, maintenance and operation of an airport. But assuming that the conditions and qualifications fixed by the sponsoring municipality pertain to the property referred to in section 15, then the terms in reference to such property are fixed *ex parte*, without any right of the authority to reject, approve or modify the same. To illustrate, it will be assumed that a city which has the right to approve an authority and become its sponsor has an airport which it has acquired and is operating under authority conferred by other statutes. It elects to become a sponsor and prescribes the condition and qualification to be that the authority shall lease or purchase its airport and airport facilities at a stipulated figure. The result of such a declaration is obvious. The sponsoring municipality may release itself from its taxable liability necessary for the maintenance of its airport. It may cast such burden upon the authority. The authority is required to accept it without action or approval of its governing body and the voters residing within the boundaries of the authority have no opportunity to approve or reject such terms at an election.

If the conditions and qualifications fixed by the sponsoring municipality impose any obligation upon the authority which requires the levying of a tax, then the question is, which governing body has fixed the obligation? Is it the governing body of the sponsoring municipality or the board of commissioners that governs the authority? It is obvious the obligation is fixed and determined by the governing body of the sponsoring municipality.

Section 5 of article IX of the constitution of 1848 provided: "The corporate authorities of counties, townships, school districts, cities, towns and villages may be vested with power to assess and collect taxes for corporate purposes; * * *." This provision was construed as a limitation upon the power of the legislature to authorize any other than corporate authorities of the body to be taxed to make such levy. (*Harward* v. *St. Clair and Monroe Levee and Drainage Co.* 51 Ill. 130; *People ex rel. Wilson* v. *Salomon,* 51 Ill. 37; *Gage* v. *Graham,* 57 Ill. 144.) A similar provision in the constitution of 1870 (sec. 9, art. IX) provides that for general corporate purposes, all municipal corporations may be vested with authority to assess and collect taxes. In construing and applying such provision, the principles announced in construing the provision in the constitution of 1848 have been followed and applied. (*Updike* v. *Wright,* 81 Ill. 49; *Cornell* v. *People ex rel. Walsh,* 107 Ill. 372; *Morgan* v. *Schusselle,* 228 Ill. 106.) In the *Morgan case* it was said: "It has been heretofore frequently decided by this court that section 9 of article 9 of our present constitution is a limitation upon the power of the legislature to delegate the right of corporate or local taxation to any other than the corporate or local authorities of the district to be taxed, and that by the phrase 'corporate authorities,' as used in said section of the constitution, must be understood those municipal officers who are either directly elected by the

people to be taxed or appointed in some mode to which they have given their assent."

It is also contended that the act violates section 10 of article IX of the constitution in that the legislature has empowered the sponsoring municipality to impose taxes upon the authority. It is not necessary to extend this opinion to include a discussion of such question. We hold that the provision of the third subparagraph of paragraph 2 of section 2, which clothes a sponsoring municipality with the power to prescribe conditions upon which it becomes a sponsor is in violation of section 9 of article IX of the constitution. Furthermore, the provision for sponsorship is the very essence of the act. The manner of the selection of the commissioners is dependent upon whether one or more municipalities has elected to sponsor the authority. Four of the five defendants in this case were appointed as commissioners by reason of the fact that the city of Springfield had elected to become a sponsor to the authority. The provision in question is so vital to the creation of the authority and the appointment of its governing body that its invalidity takes with it the entire act.

While this cause was under advisement, attorneys representing various municipalities who have established or are planning for the establishment of airports under statutes other than the one involved here, petitioned the court for leave to appear and file briefs as *amici curiae*. Certain questions were suggested which made it clear that the case should be presented on a broader aspect than first submitted. Accordingly, counsel for the respective parties were requested to file additional briefs supplementing questions theretofore briefed and to extend the briefs to include other questions. Such additional briefs have been filed. One of the questions thus raised goes to the power of the legislature to create a municipality with the power to levy taxes to be used in the establishment and maintenance of

an airport when at the same time the territorial area of such municipality is in whole or in part superimposed upon the territorial area of another municipality which has or may exercise power for the same or similar purposes.

The various acts which deal with the establishment and maintenance of airports by means of taxation as exercised by municipalities with a population of less than 500,000 are as follows: The Cities and Villages Act, (Ill. Rev. Stat. 1943, chap. 24,) which became effective January 1, 1942, recodified the laws in reference to conferring power upon cities and villages for the establishment and maintenance of airports. In section 23-96, it was provided that cities of the class designated have the power to establish and maintain airports either within or without the corporate limits of the municipality; to acquire property and rights or easements therein for any of the specified purposes by purchase, condemnation, agreement, lease, or otherwise. The only provision for the levying of a tax by a city or village for the establishment of an airport is limited to the power the city or village may exercise to levy taxes generally for corporate purposes. Section 16-1.

An act which became effective July 21, 1941, entitled, "An Act in relation to the establishment, maintenance and operation of aviation districts" (Ill. Rev. Stat. 1943, chap. 15½, par. 23 et seq.) provides, in section 1, that "Any two or more contiguous counties, or any contiguous portions thereof, may be incorporated as an aviation district" in the manner provided therein. Section 2 of the act directs that "Any two or more contiguous cities, villages or incorporated towns * * * whether located in the same or in different counties, may be incorporated as an aviation district" in the manner prescribed. The act provides for an election, and, if a majority are in favor of the organization of the district, it shall thenceforth be deemed as an organized aviation district. The Governor

appoints the trustees, and such district "has the power to acquire, own, construct, manage, maintain and operate airports and landing fields within such district * * * including necessary structures, and for such purpose or purposes may acquire by dedication, gift, purchase, lease, contract, or condemnation, * * * all property and rights necessary or proper therefor." The board of trustees is given the power to borrow money and issue bonds, same to be payable from the revenue derived from the rentals, tolls, fees, or other income accruing to said district. By section 15 of the act, the board of trustees may, upon an affirmative vote at an election, issue bonds and levy taxes for the payment of the same.

The Park Airport Act, (Ill. Rev. Stat. 1943, chap. 105, par. 327b *et seq.*) as amended in 1943, authorizes any park district organized under any general or special act, having a population of less than 500,000, to acquire title to, by purchase or condemnation, or to lease, a site for an airport and landing field, and to provide hangars, shops and other necessary equipment incident to the operation of such an airport. It provides for an election, and if there is an affirmative vote, the governing body of the park district may issue bonds and levy an annual tax for such purposes.

An act adopted July, 1943, (Ill. Rev. Stat. 1943, chap. 15½, par. 84 *et seq.*) authorizes the county board of any county with a population less than 500,000 to establish and maintain airports and landing fields and to levy a tax not to exceed five mills on the dollar annually on all the taxable property of the county, such money when collected to be known as the "County Airport Fund" and used exclusively for purposes of an airport. Section 2 (par. 85) of the said act authorizes the "county board of any such county and the corporate authorities of any one or more taxing districts lying wholly or partly within the corporate limits of the said county which taxing district or districts are authorized under the laws of this state to acquire,

establish, operate and maintain airports and landing fields, may hereafter by agreement provide for the joint construction, maintenance and control of an airport and landing field." The act provides for the chairman of the board of supervisors to appoint a board of directors and section 6 of the act gives them power to establish an airport, regulate and control it. It is also given the power of eminent domain and may, under provisions stated in the act, issue bonds and levy taxes for the payment of the same.

It does not appear that any of the municipalities which might exercise the powers contained under the several statutes have taken any action in reference thereto, but if they should, it would, as to the territorial area of the Springfield Airport Authority, produce the following result. If the governing body of Sangamon county should exercise the power conferred upon it under the County Airport Act, the whole of the territorial area of the Springfield Airport Authority would be included within the county. If the Springfield Pleasure and Driveway Park District should exercise the power given under the Park Airport Act, it would subject a part of the area included in the authority to a tax for airport purposes under the Park Airport Act. The same situation would be true if the city of Springfield should exercise the power given under the Cities and Villages Act and establish an airport and levy a tax to maintain it. The Aviation District Act seems to be applicable only for the organization of a district composed of two or more contiguous counties or any contiguous portions thereof and any two or more contiguous cities, villages or incorporated towns and it does not appear that any of its provisions could be made applicable to any of the territory included within the authority in question.

It has been stated repeatedly that the constitution is not a grant of power to the legislative department but on

the contrary it is to be regarded as a restriction upon its powers. It has been said that every subject within the scope of civil government which is not within some constitutional inhibition, may be acted upon by the General Assembly. (*Taylorville Sanitary Dist.* v. *Winslow,* 317 Ill. 25; *Wilson* v. *Board of Trustees,* 133 Ill. 443.) Subject to constitutional restraints, the General Assembly may create any kind of corporation it deems essential for the more efficient administration of civil government and it may confer on it such powers and functions as it deems necessary and proper for the administration of the particular powers which the corporation may be authorized to exercise. *Board of Education* v. *Upham,* 357 Ill. 263; *Perkins* v. *Comrs. of Cook County,* 271 Ill. 449; *People* v. *Bowman,* 247 Ill. 276.

The case of *People* v. *Bowman,* 247 Ill. 276, presented a question as to the validity of a tax levied by a sanitary district located in St. Clair county. It was claimed that section 24 of the act under which the sanitary district had been organized was unconstitutional in that it provided that if the sanitary district when organized should include, in whole or in part, any existing drainage district having levies, drains or ditches which were conducive to sanitary purposes, the newly created sanitary district should pay the old district therefor upon such terms as might be agreed upon by the corporate authorities of the two bodies. Considering the power of the General Assembly to enact a law providing for the organization of a sanitary district to include an existing district and its virtual dissolution of the first district, the court said: "The legislature has the right at all times to regulate and control them, [municipal corporations] their franchises and their funds, and to alter, modify or abolish them at pleasure, so that their property is not diverted from the uses and objects for which it was given or purchased. (*Bush* v. *Shipman,* 4 Scam. 186; *County of Richland* v. *County of Lawrence,* 12 Ill. 1;

*Trustees of Schools* v. *Tatman*, 13 Ill. 27.) The constitution contains no prohibition against the creation by the legislature of every conceivable description of corporate authorities, and the endowment of them, when created, with all the faculties and attributes of other pre-existing corporate authorities. (*People* v. *Salomon*, 51 Ill. 37.) Nor is the General Assembly, in exercising its power to authorize the organization of municipal corporations with powers of taxation for corporate purposes, limited by the boundaries of pre-existing corporations or compelled to adopt their corporate authorities. * * * While two municipal corporations cannot have jurisdiction and control, at one time, of the same territory for the same purpose, no constitutional objection exists to the power of the legislature to authorize the formation of two municipal corporations in the same territory at the same time for different purposes, and to authorize them to co-operate, so far as co-operation may be consistent with or desirable, for the accomplishment of their respective purposes." See, also, *Perkins* v. *Comrs. of Cook County*, 271 Ill. 449; *Wilson* v. *Board of Trustees*, 133 Ill. 443.

In other cases involving similar questions, this court announced the principle that there could not be two municipalities possessed of the same or similar powers, privileges and jurisdictions covering the same territory at the same time. In *West Chicago Park Comrs.* v. *City of Chicago*, 152 Ill. 392, quoting from Grant on Corporations, it was said that such rule must be observed for the sake of order and peace, for there cannot be two corporations for the same purposes with coextensive powers of government extending over the same district.

The application of these principles has usually been made in cases involving the validity of tax levies and cases involving the jurisdiction of corporate bodies. In the tax cases it was claimed that a levy was void as to certain property for the reason that such property had already

been subjected to a tax levy by another corporate body for the same purpose. In some cases *quo warranto* actions were brought to test the right of a taxing body of one corporation to exercise jurisdiction over certain property. Obviously, these questions cannot be determined in this case for here we are dealing only with the validity of the Airport Authority Act and how the Springfield Airport Authority is affected by the possibility of an overlapping jurisdiction in another municipality. Questions that might arise out of a conflict of rules and regulations adopted by two or more of such corporate bodies are outside the scope of inquiry.

Cases involving the right to subject property to the jurisdiction of two corporate bodies organized for the same purpose have arisen under the statutes pertaining to drainage of farm lands. In *People ex rel. Smerdon* v. *Crews,* 245 Ill. 318, it was held that drainage districts organized under the Levee Act and districts organized under the Farm Drainage Act are both *quasi*-corporations, and that it is not consistent for two such corporations to occupy the same territory at the same time for the same purpose. (*People ex rel. Bancroft* v. *Lease,* 248 Ill. 187; *Soldier Creek Drainage Dist.* v. *Illinois Central Railroad Co.* 323 Ill. 350; *People ex rel. Goldsbery* v. *Zoller,* 337 Ill. 362.) It was held that a petition for organization of a district was a jurisdictional matter; and if a petition included within the territory described lands which were in an existing drainage district, such was fatal to the validity of the organization of the district. It will be noted that these cases involved the action of corporate bodies whose purposes were purely local. The sole aim was to furnish drainage for the lands included within the district, and if lands included within a district were assessed for the benefits accruing and the drainage had been or would be furnished, then it could not be assessed a second time for the same purpose. The municipalities referred to in the sev-

eral airport acts are vested with powers entirely different from those of drainage districts, in that they are acting as an agency of the State in exercising a function of government. The cases involving *quasi*-corporations organized under the drainage acts are not in point here.

In the organization of park districts located within the jurisdiction of an existing municipal corporation which had the power to create and maintain parks, this court has adhered strictly to the principle that the General Assembly has the power to withdraw from a municipal corporation a power previously given, and confer it upon another municipality. In such cases recognition has been given to the principle that two distinct municipal corporations cannot exercise the same powers, jurisdiction and privileges in the same territory at the same time. In some of the cases an analysis of the acts disclosed that purposes for which the board of park commissioners was created and the power it was to exercise was in a field separate and distinct from that in which the existing municipality was to exercise its power and that the two could be harmonized. *West Chicago Park Comrs.* v. *City of Chicago,* 152 Ill. 392; *South Park Comrs.* v. *Chicago City Railway,* 286 Ill. 504.

Questions in other cases pertained to the right of the legislature to confer power upon a corporate school body to furnish education in certain branches when there was already in existence a corporate school body exercising the same functions in the whole or a part of the same territory. Most of them involved tax levies and questions as to whether each corporation should be subject to the constitutional debt limit. (*People ex rel. Brockamp* v. *Chicago and Illinois Midland Railway Co.* 256 Ill. 488; *People ex rel. Thompson* v. *Read,* 233 Ill. 351; *Russell* v. *High School Board,* 212 Ill. 327.) These cases are of little weight except for the general principle announced and followed in other cases that there is no overlapping

of districts unless the boundaries are co-terminus. (*Fiedler* v. *Eckfeldt*, 335 Ill. 11; *People ex rel. Darnell* v. *Woodward*, 285 Ill. 165.) In the latter case it was said: "It is well known that in our complex system of government different public authorities exercise within parts of the same territory practically similar powers. Thus, in *Chicago Packing and Provision Co.* v. *City of Chicago*, 88 Ill. 221, it was held that two municipal corporations could exercise within the same district the power of prohibiting or licensing the operation of packing houses. So, also, in *Wilson* v. *Sanitary District of Chicago*, 133 Ill. 443, and *People* v. *Nelson*, 133 Ill. 565, it was held that the organization of the sanitary district, which included parts of other municipalities, was constitutional, even though the different municipal authorities exercised, in parts of the same territory, the power and authority to build and control public improvements for the sewage disposal in such territory. This power and authority must be exercised in a particular way by these different public authorities so as not to bring different municipalities into conflict in doing the same identical work for the same sections. It is well known that the park systems of Chicago, the Sanitary District of Chicago and the city of Chicago have police forces that are active within substantially the same territory. This rule that two municipal corporations should not exercise their powers and franchises within the same territory at the same time and for the same purpose should be practically and reasonably enforced so as not to overburden with taxes the citizens of the same territory and yet in such a way as to not make it impossible to furnish all the needful facilities for good government to such territory."

By the adoption of the several airport acts the legislature has provided agencies whereby power which pertained to the public welfare might be exercised. It had the au-

thority to delegate such power to one municipality with one governing head or it might confer it upon more than one agency. Conflicts that might arise between two or more of such municipalities, or inharmonious action that they might take in the adoption of regulatory measures, are not the subject of consideration on this review. Nor can consideration be given to the possibilities that repeal by implication might control as to some of said enactments.

Section 20 (par. 68) provides that after the site of the airport or airports has been determined by the board of commissioners "any land devoted exclusively to agricultural uses and located within the corporate limits of the authority may be disconnected from such incorporated territory." An act of 1933 (Laws of 1933, p. 220,) provided for the disconnection of agricultural lands from cities, towns, or villages and prescribed the procedure to be followed. One of the conditions upon which such disconnection should be allowed was that any land located within the corporate limits of any city, town or village containing ten acres or more, and used exclusively for agricultural purposes, might be disconnected. The validity of this act was before this court in *Forsythe* v. *Village of Cooksville,* 356 Ill. 289, and it held that it was in contravention of section 22 of article IV of the constitution which prohibits the General Assembly from passing local or special laws. The decision in that case is controlling in this as to section 20, but we conclude that section 20 of the instant act is separable from the remainder of the act and that the trial court was correct in its ruling in that regard.

Other constitutional objections are presented, but, under the views expressed, it is not necessary to extend this opinion for a discussion of them. It is not the province of courts to determine whether legislation enacted by the legislature is wise or whether it will result in the most

economical way of administering government. That is a function of the legislative branch of government and when it is enacted it remains for the courts to determine whether the act or any of its sections are in violation of the constitutional provisions.

The judgment is reversed and the cause remanded to the circuit court of Sangamon county, with directions to sustain the motion to strike the answer, and for judgment of ouster.

*Reversed and remanded, with directions.*

Mr. Justice Thompson, dissenting.