LOIS WEISBERG, Petitioner-Appellee, *v.* JANE M. BYRNE, Mayor of the City of Chicago, *et al.*, Respondents-Appellants.—(MICHAEL E. LAVELLE *et al.*, Respondents.)

First District (4th Division)   No. 80-3154

Opinion filed January 16, 1981.

Stanley Garber, Corporation Council, of Chicago (Franklin J. Lunding, Jr., Special Assistant Corporation Counsel, and Biggam, Dowan, Marquardt & Lunding, of counsel), for appellants.

Michael Kreloff, William H. Luking, Michael H. Holland, and Dennis M. Sarsany, all of Chicago, for appellee.

PER CURIAM (Romiti, P. J., Jiganti and Linn, JJ.):

This was an action in *mandamus* to require that an election be held to fill a vacancy in the office of alderman for the 44th Ward of the city of Chicago. Respondents Jane M. Byrne, mayor of the city of Chicago, and

Walter S. Kozubowski, clerk of the city of Chicago, appeal[1] from an order of the trial court requiring them to perform those acts necessary to conduct the election on February 24, 1981, the statutory date for the next consolidated election. Ill. Rev. Stat. 1979, ch. 46, par. 2A—1.1(b).

Petitioner Lois Weisberg alleged in her petition, filed December 5, 1980, that Bruce P. Young, having been elected to a four-year term as alderman of the 44th Ward on April 3, 1979, resigned from that post in a letter dated September 2, 1980, which was filed and published by respondent Kozubowski on September 10, 1980, in the Official Journal of Proceedings of the Chicago City Council. In full force and effect at that time were sections 3—2—7 and 3—4—14 of the Illinois Municipal Code (Ill. Rev. Stat. 1979, ch. 24, pars. 3—2—7 and 3—4—14), which provided:

"§3—2—7. Except as otherwise provided in this Code, whenever there is a vacancy in any elective municipal office, the corporate authorities may order a special election for the purpose of filling the vacancy. Whenever a special election is ordered for this or any other purpose under this Code, the corporate authorities shall appoint the judges, canvass the returns, and otherwise provide by ordinance for conducting the election in the manner, as nearly as may be, as that set out in the Election Code, approved May 11, 1943, as heretofore and hereafter amended. The corporate authorities shall give notice of the offices and questions to be voted upon in the special election by publishing notices for the same length of time and in the same manner as is required in the case of a general municipal election.

 \*  \*  \*

§3—4—14. An alderman may resign from his office. *A vacancy occurs in the office of alderman by reason of resignation,* failure to elect or qualify, death, permanent physical or mental disability, conviction of a disqualifying crime, abandonment of office, or removal from office or of residence from the ward. If a vacancy occurs in the office of alderman in any such manner or otherwise in any city having a population under 500,000, the vacancy shall be filled at the next succeeding general election for aldermen at which time the vacancy shall be filled for the unexpired balance of the term.

The provisions of Sections 3—2—7 and 3—2—8 relating to special elections to fill vacancies shall not apply to the filling of the vacancy in the office of aldermen in any city having a population under 500,000. The mayor with the advice and consent of the city council may appoint a person to serve as alderman in the vacancy

---

[1] Respondents Lavelle, Davis, and Suthers, as the Chicago Board of Election Commissioners, do not appeal.

until the next general election, as provided in this section and until the person elected qualifies.

*In any city where there is a vacancy in the office of alderman, not filled by election, when at the occurrence of said vacancy, the unexpired term was more than 27 months in length, the corporate authorities shall call a special election to fill said vacancy,* notwithstanding the other provisions of this section." (Emphasis added.) (Ill. Rev. Stat. 1979, ch. 24, pars. 3—2—7, 3—4—14.)

Effective December 1, 1980, these statutes were amended to read:

"§3—2—7. Except as otherwise provided in this Code, *whenever a vacancy occurs in any elective municipal office, with at least 28 months remaining in a 4-year term, and the vacancy occurs at least 130 days before the consolidated election next scheduled under the general election law, the office shall be filled for the remainder of the term at that consolidated election.* Whenever an election is held for this purpose, the municipal clerk shall certify the office to be filled and the candidates therefor to the proper election authorities as provided in the general election law. Until the office is filled by election, the mayor or president shall appoint a qualified person to the office, subject to the advice and consent of the corporate authorities. Municipal officers appointed or elected under this Section shall hold office until their successors are elected and have qualified.

⁎ ⁎ ⁎

§3—4—14. An alderman may resign from his office. *A vacancy occurs in the office of alderman by reason of resignation,* failure to elect or qualify, death, permanent physical or mental disability, conviction of a disqualifying crime, abandonment of office, or removal from office or of residence from the ward. If a vacancy occurs in the office of alderman in any such manner or otherwise in any city having a population under 500,000, the vacancy shall be filled for the unexpired balance of the term at the next succeeding consolidated election as provided in Section 3—2—7. The mayor with the advice and consent of the city counsel may appoint a person to serve as alderman in the vacancy until the next consolidated election, as provided in this section and until the person elected qualifies." (Emphasis added.) (Ill. Rev. Stat. 1979, ch. 24, pars. 3—2—7, 3—4—14, effective Dec. 1, 1980.)

Petitioner argued below that because at the time of Alderman Young's resignation more than 28 months remained in his term and more than 130 days remained before the next consolidated election, under either statutory scheme respondents had a duty to hold an election to fill the vacancy

and she, as a resident and registered voter in the 44th Ward, had a right to seek performance of that duty.

The cause was first heard on December 8, 1980. Petitioner had moved for an emergency hearing because, if the court were to determine that February 24, 1981, was the appropriate election date then under the applicable election provision December 15, 1980, would be the last day on which candidates could file their petitions. (Ill. Rev. Stat. 1979, ch. 46, par. 10—6, eff. Dec. 1, 1980.) The court gave respondents until December 10 to file an answer or otherwise plead and set arguments for that date.

On December 10 respondents filed a motion to strike and dismiss along with a supporting memorandum in which they contended that there was no right to an election under the new law and that petitioner was not entitled to *mandamus* relief. Arguments on the motion were heard the same day and the court announced that it would issue its ruling the following day. Respondents informed the court that if their motion was denied they would seek to present testimony at a hearing in opposition to the petition. The court inquired what facts they would contest at such a hearing. In response the respondents cited only one factual allegation they would seek to challenge, although they also indicated that others might arise through discovery. The one fact cited was the alleged refusal by city officials of all demands to call an election.

The following day, December 11, the court denied respondents' motion. In a memorandum opinion the court found that the new law was applicable and that by its terms respondents were required to hold an election to fill the vacancy. The court ordered respondent Kozubowski to certify to the Board of Election Commissioners that a vacancy occurred in the office of alderman of the 44th Ward as of September 10, 1980, said certification to be filed no later than 5 p.m. December 11, 1980. The Board was ordered to perform all acts necessary to conduct an election on February 24, 1981, to fill the vacancy. Finally the period for filing nomination petitions for the office was established as December 12, 1980, to December 18, 1980.

Following the court's publication of this memorandum opinion from the bench, respondents' attorney requested two days in which to take discovery and file an answer to the original petition. Petitioner objected, arguing that there were no material facts to be resolved. Respondents' attorney cited no disputed facts at this time. The court noted that respondents had already had a week to take discovery. It also stated that fundamentally the question at issue was a legal one. Accordingly, the court held that it would not stay or modify its order, but also informed respondents that they could file an answer if they so desired. Instead respondents filed this appeal.

That same day, pursuant to respondents' motion, this court issued a stay of the trial court's order subject to further order of court. On December 15, 1980, after having considered written arguments filed by both sides, this court vacated the stay, established an expedited briefing schedule, and scheduled the issuance of the opinion for January 16, 1981. We also modified the order of the trial court to provide that certification was to be filed with the Board of Election Commissioners no later than 5 p.m. on December 16, 1980.

I.

■■■ Respondents' primary contention on appeal is that under the new law, which both parties now agree is the applicable one, no election is required. They contend that for purposes of the new law the vacancy period began December 1, 1980, the effective date of the new law, and ran until the date of the next consolidated election, February 24, 1981. Under this construction the vacancy therefor occurred with less than 130 days before the election, so that no election to fill the vacancy was required. Respondents do concede that a vacancy in fact existed at least as of September 10, 1980, when the resignation letter was filed and published. (*Cole v. McGillicuddy* (1974), 21 Ill. App. 3d 645, 316 N.E.2d 109; see *Allen v. Powell* (1969), 42 Ill. 2d 66, 244 N.E.2d 596.) But they contend that to prevent a retroactive application of the new law the computation of the vacancy period cannot be started earlier than the effective date of that law. We find no merit to this contention. The mere fact that a statute relates to antecedent events or draws upon antecedent facts for its operation does not render it retroactive. (*United States Steel Credit Union v. Knight* (1965), 32 Ill. 2d 138, 204 N.E.2d 4; *Sipple v. University of Illinois* (1955), 4 Ill. 2d 593, 123 N.E.2d 722.) Furthermore, as respondents concede, the definition of an aldermanic vacancy was unchanged by the amendments at issue. Section 3—4—14 provided before and after amendment that a vacancy "occurs in the office of alderman by reason of resignation ° ° °." Where the legislative intent is evident from the plain language of a statute we have no authority to construe that statute in a different manner. (*Droste v. Kerner* (1966), 34 Ill. 2d 495, 217 N.E.2d 73, *cert. denied* (1967), 385 U.S. 456, 17 L. Ed. 2d 509, 87 S. Ct. 612; *Young v. Board of Trustees* (1978), 57 Ill. App. 3d 689, 373 N.E.2d 708.) The manifest intent of the legislature in drafting these statutes was to provide that in the event a substantial amount of time remained in the term of a vacated aldermanic office a new election should be held to fill that vacancy. Under the old statutes that period was 27 months. Under the new statutes the period is 28 months. Additionally, under the new statutes, because the election is to be held only on regularly scheduled election dates, the requirement was added that 130 days remain

between the date the vacancy occurred and the next scheduled consolidated election. Under the facts of this case that additional requirement is clearly met. Thus, these amended statutes by their plain terms require that the vacancy occurring when Alderman Young resigned be filled at the February 24, 1981, consolidated election.

## II.

Respondents also contend that they were not given an adequate opportunity to file an answer in the trial court. But in fact, in the hearings below, respondents never alluded to any material facts they would challenge in such an answer and when they were given an opportunity to file an answer they chose not to do so. During the hearing on these matters counsel for respondents was specifically asked by the trial court what factual issues would be contested at an evidentiary hearing. The only item cited by counsel was whether the city had refused a demand for an election. Yet counsel readily concedes on appeal that in a matter such as this, where a public right is at issue, there is no requirement that such a demand and refusal be shown in order to obtain *mandamus* relief. (*People ex rel. Meyer v. Kerner* (1966), 35 Ill. 2d 33, 219 N.E.2d 617; *People ex rel. Busch v. Green* (1917), 281 Ill. 52, 117 N.E. 764.) Additionally, when counsel sought leave to file an answer following the announcement of the trial court's opinion he cited no facts which respondents intended to contest. Under these circumstances we concur with the determination of the trial court that only a legal question was at issue, and therefore we find no basis for reversal on the ground that no answer was ever filed in this cause.

## III.

■■ Our determination of the effect of the new law also serves to dispose of respondents' contention that the requisite elements of a *mandamus* action were not established by petitioner. Generally in order to obtain *mandamus* relief a party must show that there is a clear right to relief and that there is a corresponding duty on the part of the respondents to do the act sought to be compelled. (*People ex rel. Atchison, Topeka & Santa Fe Ry. Co. v. Clark* (1957), 12 Ill. 2d 515, 147 N.E.2d 89; *Arthur Weil & Co. v. Board of Education* (1977), 49 Ill. App. 3d 649, 364 N.E.2d 542.) As we have already noted, the additional element of demand and refusal is not required where, as is the case here, enforcement of a public right is at issue. Our construction of the new law has established the right to an election and the duty of the respondents to hold that election on February 24, 1981. Although some language in the opinion of the trial court suggests the court may have felt that its order could be founded generally on the court's equitable powers without all the elements of *mandamus* having

been established, we need not reach that question, for we have determined that all necessary elements were established.

## IV.

■■ Finally respondents contend that petitioner, by failing to come into court earlier to seek to compel an election, is guilty of laches, and that relief should have been denied on that basis. The defense of laches has been defined as "such neglect or omission to assert a right, taken in conjunction with a lapse of time of more or less duration and other circumstances causing prejudice to an adverse party, as will operate to bar relief in equity." (*Pyle v. Ferrell* (1958), 12 Ill. 2d 547, 552, 147 N.E.2d 341, 344.) It is applicable to *mandamus* proceedings. (*People ex rel. Cronin v. Cahill* (1969), 118 Ill. App. 2d 18, 254 N.E.2d 161.) The determination whether or not to apply the defense is within the discretion of the trial court, and absent an abuse of that discretion the trial court's determination will not be disturbed on appeal. *Beckham v. Tate* (1978), 61 Ill. App. 3d 765, 378 N.E.2d 588.

■■ In this cause the relief ordered by the trial court was pursuant to statutes effective December 1, 1980. Petitioner's suit was filed December 5, 1980. Certainly respondents cannot contend that four days was too long to wait to file this action. Respondents' contention that suit should have been filed prior to the effective date of the statutes as amended implies that respondents could have established a right to *mandamus* relief under the old statutes. But such relief cannot be granted where the act sought to be compelled is discretionary. (*People ex rel. Carson v. Mateyka* (1978), 57 Ill. App. 3d 991, 373 N.E.2d 471.) Under the terms of the old statutes the city council was required to call a special election, but the time for that election was left to the discretion of that body. It is thus not clear that petitioner would have been entitled to an order requiring the city to hold an election on a date certain had she brought suit under the old statutes. Furthermore the only prejudice or injury claimed by respondents to have resulted from petitioner's alleged delay is the "cost and confusion" of resolving this issue and holding an election. We are not convinced that any such confusion was caused by petitioner. Nor is it evident why the cost of an election which the respondents had a duty to hold should be considered to be the result of delay by the petitioner in seeking enforcement of that duty. We accordingly find no basis for overturning the trial court's determination that application of the defense of laches would not be appropriate.

The judgment of the trial court, as modified by previous order of this court, is affirmed.

Affirmed.