HAROLD GRIFFIN et al., Plaintiffs-Appellees, v. THE CITY OF NORTH CHICAGO, Defendant-Appellant.

Second District No. 82—50

Opinion filed February 2, 1983.—Opinion modified on denial of rehearing March 10, 1983.

William G. Rosing, Stephen G. Applehans, and Jeffery C. Ericksen, all of Rosing, Carlson & Magee, Ltd., of Waukegan, for appellant.

Donald T. Morrison and Joseph T. Morrison, both of Waukegan, for appellee.

JUSTICE HOPF delivered the opinion of the court:

Defendant, City of North Chicago, appeals from the declaratory judgment entered on December 23, 1981, in the circuit court of Lake County in favor of plaintiffs, Harold Griffin and Lake County Forest Preserve District (the Forest Preserve). On appeal, defendant argues that section 6 of "An Act to provide for the creation and management of forest preserve districts in counties having a population of less than 3,000,000" (Ill. Rev. Stat. 1981, ch. 96½, par. 6309) (the Act) prohibits plaintiffs from consummating their real estate sales contract, executed on February 20, 1981, without defendant's con-

sent. The trial court held the Act's consent requirement inapplicable to plaintiffs' purchase agreement, finding that to apply the consent requirement would give it a retrospective application.

The Forest Preserve approved a resolution on October 10, 1975, designating certain parcels of land in Lake County for acquisition pursuant to a study finding the land suitable for forest preserve, flood control and related purposes. This resolution called for the appraisal, survey, title search and the making of an offer to purchase this property, the amount of compensation and terms of purchase "subject to the final approval of [the] Board." It further provided that should the Forest Preserve and individual property owners be unable to agree upon a purchase price, condemnation proceedings should be initiated.

Griffin owns a single-family residence located on a parcel of land situated entirely in the city of North Chicago and designated for acquisition by the Forest Preserve pursuant to its 1975 resolution. After negotiations, Griffin and the Forest Preserve entered into a real estate sales contract on February 20, 1981, for the purchase of this property. The contract included a rider which subjected the contract to the Forest Preserve obtaining "the concurrence of the City of North Chicago, as required by law."

Apparently this paragraph's presence results from an amendment, effective January 1, 1981, to the Act. The Act grants forest preserve districts the power to acquire land in order to fulfill the purposes for which the districts were established. The amendment provides in pertinent part, however:

"No district with a population less than 600,000 shall have the power to purchase or condemn property within a municipality without the concurrence of the governing body of the municipality ***." Ill. Rev. Stat. 1981, ch. 96½, par. 6309.

The city of North Chicago refused to consent to the proposed sale. Thereupon, the Forest Preserve and Griffin filed a complaint for declaratory relief asking that the court declare the amendment to be both inapplicable to their sales contract and unconstitutional. On December 23, 1981, the court held the amendment inapplicable to plaintiffs' real estate contract. To hold it applicable, the court said, would give it a retrospective effect. In the court's judgment order, it made, *inter alia*, the following findings:

(1) The Forest Preserve has been engaged in the acquisition of land for the "Green Belt Forest Preserve" since 1969;

(2) The Forest Preserve designated the land for this preserve by resolution, no later than May 24, 1976;

(3) The Forest Preserve delays instituting eminent domain pro-

ceedings on single-family residences designated for acquisition until that land is required for the preserve;

(4) Griffin owns land designated for acquisition and has voluntarily agreed to sell this land to the Forest Preserve;

(5) The City of North Chicago refused to consent to the sale; and

(6) To apply the amendment to the Act to this property "would be to give the statute a retrospective application which was not intended by the legislature, and would be arbitrary, unreasonable, and unjust."

The court declined to pass on plaintiffs' constitutional claims. We note that the above order did not specify that a contract had been executed on February 20, 1981.

On appeal, the city contends that the trial court erred in finding that the amendment to the Act (Ill. Rev. Stat. 1981, ch. 96½, par. 6309) was inapplicable to the sale to which they refused to consent. We agree.

Both Griffin and the Forest Preserve argue that the General Assembly did not intend to give the amendment the retroactive effect that they contend applying the amendment to their real estate contract would give it. They argue, and defendant does not dispute, that retroactive application of legislation is not favored and, as a general rule, statutes are construed to operate prospectively unless the legislative intent that they be given retroactive application clearly appears from the express language of the statute or by necessary implication. (*United States Steel Credit Union v. Knight* (1965), 32 Ill. 2d 138, 142, 204 N.E.2d 4; *Board of Review v. Property Tax Appeal Board* (1979), 69 Ill. App. 3d 265, 387 N.E.2d 394.) The parties further agree that the legislature did not intend the retroactive application of the amendment.

The source of the parties' disagreement is whether application of the amendment would in fact be retroactive. Plaintiffs argue that they did not execute the real estate sales contract until after the effective date of the amendment, and the earlier resolution to acquire Griffin's land and subsequent negotiations are the relevant transactions in determining the retroactive effect of the amendment. The city, on the other hand, focuses upon the execution date of the contract as the relevant date to determine whether the amendment's application to the contract would be retroactive.

●■ ■ A retroactive or retrospective law has been defined as one that takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a

new disability in respect to transactions or considerations already passed. (*United States Steel Credit Union v. Knight* (1965), 32 Ill. 2d 138, 142, 204 N.E.2d 4.) The legislature cannot pass a retrospective law impairing the obligation of a contract nor deprive a party of a vested right. (*People ex rel. Eitel v. Lindheimer* (1939), 371 Ill. 367, 373, 21 N.E.2d 318.) A vested right is more than a mere expectation based upon an anticipated continuance of existing law; it must have become a title, legal or equitable, to the present or future enjoyment of property. (*Hogan v. Bleeker* (1963), 29 Ill. 2d 181, 188, 193 N.E.2d 844; *People ex rel. Eitel v. Lindheimer.*) If an existing law changes by amendment or repeal prior to the vesting of a right, no cause to object arises. A statute is not retroactive merely because it relates to antecedent events or draws upon antecedent facts for its operation. *United States Steel Credit Union v. Knight; Weisberg v. Byrne* (1981), 92 Ill. App. 3d 780, 784, 416 N.E.2d 298.

The Forest Preserve claims that it had a vested right in the land prior to the enactment of the amendment. Foremost in its contentions, and apparently accepted by the trial court, the Forest Preserve asserts it acquired a vested right in Griffin's land by virtue of its acquisition plan, beginning with its 1969 resolution to create the "Green Belt Forest Preserve," its subsequent expenditures in excess of $3,800,000 to acquire other land, and its 1975 resolution to acquire Griffin's land, an acquisition delayed only by its policy not to acquire the land until necessary. Thus, according to the Forest Preserve, the contract date represents only the culmination of its plan and is not the crucial date to determine whether application of the statute would be retroactive.

■ Generally, the adoption of a resolution or the entering into negotiations to acquire land does not pass any interest in that land. (See *City of Chicago v. Loitz* (1975), 61 Ill. 2d 92, 329 N.E.2d 208; *Chicago Housing Authority v. Lamar* (1961), 21 Ill. 2d 362, 172 N.E.2d 790; *Eckhoff v. Forest Preserve District* (1941), 377 Ill. 208, 36 N.E.2d 245.) In *Eckhoff*, plaintiffs sued for alleged damages suffered by defendant's delay in exercising its eminent domain power over plaintiffs' land after defendant adopted recommendations to create a forest preserve containing a portion of plaintiffs' land. In denying damages, the court explained that "[t]he fact that at some future time a municipal corporation, with power of eminent domain, may require the land of a private owner, is one of the conditions on which the owner holds land in this State. Entering into negotiations for the purchase, and filing of a petition to condemn, vests no interest in land." (377 Ill. 208, 214, 36 N.E.2d 245.) The court further stated that the

"taking of land by eminent domain" is not accomplished by passing resolutions or ordinances, nor by negotiating with the owner for the purchase of it or by serving notice to the owners that land may be required for public purposes. (377 Ill. 208, 214, 36 N.E.2d 245.) Similarly, in *Lamar*, the court held that defendant had no right to alleged damages arising from the plaintiff's notifying the defendant of its plan to acquire the defendant's property. The court found that the plaintiff acquired no interest in defendant's land by entering into negotiations or by filing a petition to condemn. *Chicago Housing Authority v. Lamar* (1961), 21 Ill. 2d 362, 366, 172 N.E.2d 790.

Finally, in *City of Chicago v. Loitz* (1975), 61 Ill. 2d 92, 329 N.E.2d 208, the court affirmed the trial court's dismissal of defendant's counterclaim for damages resulting from the city's cancellation of a project which would have required the purchase of defendant's land. Defendant had orally agreed to sell the land to plaintiff and argued for damages resulting from the cancellation of the proposed deal. The court found that "[t]he general rule followed in Illinois and most other jurisdictions is that mere planning or plotting in anticipation of a public improvement does not constitute a 'taking.' " 61 Ill. 2d 92, 97, 329 N.E.2d 208.

■ Since no taking occurs until the execution of a purchase agreement or conclusion of eminent domain proceedings, no rights to property are transferred until that date. In the instant case, the Forest Preserve's 1975 resolution was one of intent only; consequently, it acquired no rights in Griffin's land until after the contract had been executed. For the same reasons, Griffin had no vested right in the sale of the land to the Forest Preserve.

■ The Forest Preserve further argues that it has a vested right in the development of the Green Belt Forest Preserve and that if it is prohibited from completing the development, the value of its past action would be diminished. However, it is well established that powers conferred upon municipal corporations of all kinds are not vested rights as against the State and a legislature has absolute power to change, modify, or destroy them at pleasure. (McQuillin, Municipal Corporations sec. 4.05, at 14 (3d ed. 1979).) The General Assembly may withdraw from a municipal corporation a power it has previously given and confer it upon another. (*People ex rel. Greening v. Bartholf* (1944), 388 Ill. 445, 463, 58 N.E.2d 172.) The General Assembly, in the instant case, modified the Forest Preserve's power to condemn or purchase property in certain situations. In doing so, it did not violate any vested rights of the Forest Preserve to complete the Green Belt Forest Preserve because the Forest Preserve's right to

complete it was contingent upon the continuation of the powers granted by the General Assembly.

■ Nothing in the statute indicates a legislative intent that the statute should not apply to land acquisitions in which negotiations have been previously initiated. In construing a statute, the intent of the legislature should be ascertained and given effect. (*Illinois National Bank v. Chegin* (1966), 35 Ill. 2d 375, 378, 220 N.E.2d 226; *Droste v. Kerner* (1966), 34 Ill. 2d 495, 503, 217 N.E.2d 73, *cert. denied* (1967), 385 U.S. 456, 17 L. Ed. 2d 509, 87 S. Ct. 612.) All sections of the statute should be construed together in light of the statute's general purpose and plans, the evil intended to be remedied, and the objective to be attained. (*Scofield v. Board of Education* (1952), 411 Ill. 11, 15, 103 N.E.2d 640.) Legislative intent is ascertained primarily from a consideration of the statute's language. (*Droste v. Kerner*.) Words employed in a statute should be given their plain, ordinary, or commonly accepted meaning, unless to do so would defeat the legislative intent. *Droste v. Kerner* (1966), 34 Ill. 2d 495, 503, 217 N.E.2d 73.

■ The language of the Act clearly reveals the intent of the legislature that the consent requirement applies to any sale or condemnation of property occurring after January 1, 1980. In fact, the statute distinguishes between situations in which a municipality has received notice of a forest preserve district's intent to acquire land and the actual acquiring of land, where it prohibits a municipality from annexing that land to defeat its acquisition. (See Ill. Rev. Stat. 1981, ch. 96½, par. 6309.) The statute further provides that where a district has begun negotiations for acquisition of land adjacent to a municipality, acquisition should be deferred for six months. These distinctions thus indicate the legislative intent that the amendment applies to sales or condemnations of land occurring after the effective date of the amendment. Since, in the instant case, Griffin did not agree to sell his land until he executed the real estate contract, which occurred after the effective date of the amendment, the Act requires that the proposed sale receive the consent of the city of North Chicago prior to its consummation. Therefore, we believe the trial court must be reversed.

The trial court did not reach the issue of the constitutionality of the Act. We do not either. "Where no constitutional question was presented to or passed upon by the trial court and the only question is the interpretation of a statute, a constitutional question is not present on appeal." *Department of Public Works & Buildings v. Schon* (1969), 42 Ill. 2d 537, 538, 250 N.E.2d 135; see also *Hah v. Stackler* (1978),

66 Ill. App. 3d 947, 954, 383 N.E.2d 1264.

For the reasons stated the judgment of the circuit court of Lake County is reversed and remanded for further proceedings consistent with this opinion..

Reversed and remanded.

NASH and UNVERZAGT, JJ., concur.