FIRESIDE CHRYSLER-PLYMOUTH MAZDA, INC., Plaintiff-Appellant, v. CHRYSLER CORPORATION, Defendant-Appellee (B.G.C.P., Inc., Intervenor-Appellee).

First District (4th Division)   No. 84—527

Opinion filed December 13, 1984.

*Justice Downing participated in the decision of the above-captioned case before the expiration of his term in office.

Gordon & Gordon, Ltd., of Chicago (Gilbert W. Gordon, of counsel), for appellant.

Winston & Strawn, of Chicago (Edward L. Foote, Edward J. Wendrow, James R. Vogler, and Kevin E. White, of counsel), for appellee.

Mitchell, Russell & Kelly, of Chicago (Thomas J. Russell and William H. Kelly, Jr., of counsel), for intervenor-appellee.

PRESIDING JUSTICE LINN delivered the opinion of the court:

Plaintiff, automobile franchisee, brought an action against defendant, automobile franchiser, alleging violation of the Illinois Motor Vehicle Franchise Act, as amended (Ill. Rev. Stat., 1981 & 1983 Supp., ch. 121½, pars. 751 through 764). Plaintiff asserts that the amended Act should be applied to protect not only those dealers that entered into franchise agreements after the effective date of the Act, but also those which, like plaintiff, entered into agreements prior to that date. Plaintiff specifically urges application of a 1983 amendment which defines "relevant market area" in such a way as would include an area not encompassed within the "sales locality" set forth in plaintiff's 1971 franchise agreement and would give plaintiff standing to protect the granting to others of an additional franchise in that area.

Defendant and intervenor, the additional franchisee, moved for summary judgment on the grounds that retroactive application of the Act would unconstitutionally impair vested contractual rights in this instance. The trial court granted summary judgment in their favor.

We affirm the decision of the trial court.

BACKGROUND .

In 1971, plaintiff/franchisee, Fireside Chrysler-Plymouth, Inc. (Fireside), and defendant/franchiser, Chrysler Corporation (Chrysler), entered into a direct dealer agreement wherein plaintiff was granted the nonexclusive right to purchase defendant's products for retail sale within a defined "sales locality." The sales locality set forth in the

agreement did not include Buffalo Grove.

In 1979, some eight years after Fireside and Chrysler had entered into their agreement, the Illinois legislature passed the Motor Vehicle Franchise Act (Ill. Rev. Stat. 1981, ch. 121½, pars. 751 through 764). The Act makes it unlawful for any automobile manufacturer, distributor, or wholesaler to grant an additional franchise of the same line make in the relevant "market area" previously granted to another franchisee, without first giving the existing franchisee notice and an opportunity to be heard in opposition to the issuance of the additional franchise. (Ill. Rev. Stat. 1981, ch. 121½, par. 754(e)(8).) Should the franchisee protest, the propriety of granting the additional franchise is to be determined by the circuit court, and the franchiser bears the burden of proving "good cause" to grant the franchise. The 1979 statute defined "market area" as "the franchisee's area of primary responsibility as defined in its franchise." (Ill. Rev. Stat. 1981, ch. 121½, par. 752(p).) The statute provided no definition of the term "relevant market area" until the Act was amended to include such definition in November 1983. Ill. Rev. Stat., 1983 Supp., ch. 121½, par. 752(q).

On or about September 1983, Chrysler notified Fireside of its intention to grant B.G.C.P., Inc., the intervenor in this action, an additional franchise in Buffalo Grove. In October 1983, Chrysler and B.G.C.P. executed a letter of intent whereby Chrysler agreed to grant such a franchise upon B.G.C.P.'s agreement to meet certain terms and conditions. After this letter of intent was executed and prior to the passage of the November 1983 amendment to the Act defining the term "relevant market area," Fireside brought the present action. B.G.C.P. sought and was granted leave to intervene.

In response to Fireside's allegations that Chrysler had violated the Motor Vehicle Franchise Act, Chrysler and B.G.C.P. moved for summary judgment on the ground that the Act could not be applied retroactively to impair the contractual rights that vested upon the signing of the 1971 franchise agreement between plaintiff and defendant. The trial court granted summary judgment in favor of Chrysler and B.G.C.P. Plaintiff now appeals.

OPINION

On appeal, plaintiff contends that it is entitled to injunctive relief against defendant because the Motor Vehicle Franchise Act, as amended (Ill. Rev. Stat., 1981 & 1983 Supp., ch. 121½, pars. 751 through 764) protects not only those automobile dealers that entered into franchise agreements after June 29, 1979, the effective date of

the Act, but also those dealers that entered into franchise agreements prior to that date. Accordingly, plaintiff contends that the Act, as amended, applies to the 1971 agreement entered into between plaintiff and defendant and that, had the trial court correctly looked to the 1983 amended definition of "relevant market area," it would have found that numerous genuine issues of material fact exist such as to preclude summary judgment. Defendant, on the other hand, asserts that the 1979 Motor Vehicle Franchise Act cannot be applied retroactively to impair the vested contractual rights of Chrysler and of B.G.C.P. and that the Act, as amended, is unconstitutional. An examination and interpretation of the relevant provisions of the Motor Vehicle Franchise Act is therefore necessary to enable us to determine whether the trial court's grant of summary judgment was proper.

The Illinois Motor Vehicle Franchise Act was enacted in 1979. Its primary effect is to declare unlawful certain enumerated unfair methods of competition and unfair and deceptive acts or practices. (*Ford Motor Credit Co. v. Aaron Lincoln-Mercury, Inc.* (N.D. Ill. 1983) 563 F. Supp. 1118.) One such practice prohibited by the Act is the granting of an additional franchise within the market area previously granted to another franchisee. (Ill. Rev. Stat. 1981, ch. 121½, par. 754(e)(8).) This prohibition is set forth in section 4(e)(8), which provides, in pertinent part, as follows:

"(e) It shall be deemed a violation for a manufacturer, a distributor, a wholesaler, a distributor branch or division or officer, agent or other representative thereof:
* * *
(8) to grant an additional franchise of the same line make in the relevant *market area* previously granted to another franchisee; provided, however, that if the manufacturer wishes to grant such an additional franchise to an independent person in a bona fide relationship in which such person is prepared to make a significant investment subject to loss in such a dealership, then the manufacturer shall give notice to the existing dealer or dealers of the same line make within the market area of the proposed additional franchise at least 60 days prior to establishment of the additional franchise. Unless the parties agree upon the establishment of such additional franchise, the propriety of the granting of such additional franchise shall be determined pursuant to the guidelines of Section 12, with the franchiser having the burden of proof ***." (Emphasis added.) Ill. Rev. Stat. 1981, ch. 121½, par. 754(e)(8).

The unamended 1979 Act defined "market area" as the "franchi-

see's area of primary responsibility as defined in its franchise." Ill. Rev. Stat. 1981, ch. 121½, par. 752(p).

In November 1983, the Motor Vehicle Franchise Act was amended to include, *inter alia*, the definition of the term "relevant market area" and declaration of purpose.

" 'Relevant Market Area' [is defined as] the area within a radius of 10 miles from the principal location of a franchise or dealership if said principal location is in a county having a population of more than 300,000 persons; if the principal location of a franchise or dealership is in a county having a population of less than 300,000 persons, then 'relevant market area' shall mean the area within a radius of 15 miles from the principal location of said franchise or dealership; or the area of responsibility as defined in the franchise agreement, whichever is greater." (Ill. Rev. Stat., 1983 Supp., ch. 121½, par. 752(q).)

The 1983 amendment left unchanged the definition of the term "market area." Ill. Rev. Stat. 1981, ch. 121½, par. 752(p).

. The Act's declaration of purpose, set forth in section 1.1 (Ill. Rev. Stat., 1983 Supp., ch. 121½, par. 751.1) reads as follows:

"Declaration of purpose. The Legislature finds and declares that the distribution and sale of vehicles within this State vitally affects the general economy of the State and the public interest and welfare, and that in order to promote the public interest and welfare, and in the exercise of its police power, it is necessary to regulate motor vehicle manufacturers, distributors, wholesalers and factory or distributor branches or representatives, and to regulate dealers of motor vehicles doing business in this State in order to prevent frauds, impositions and other abuses upon its citizens, to protect and preserve the investments and properties of the citizens of this State, and to provide adequate and sufficient service to consumers generally."

Plaintiff maintains that the provisions set forth above and, indeed, the entire Act as amended, apply to govern the conduct of the parties based on the relationship created by the franchise agreement plaintiff entered into with Chrysler in 1971, some eight years prior to the Act's effective date. Plaintiff argues that it would be illogical, especially in light of the Act's declared purpose, to presume that the legislature intended the protection afforded by the Motor Vehicle Franchise Act to extend only to a handful of new dealers, namely, those that entered into franchise agreements after 1979. In refutation of this argument, defendant cites *Marquette National Bank v. Loftus*

(1983), 117 Ill. App. 3d 771, 454 N.E.2d 11, and *McAleer-Buick Pontiac Co. v. General Motors Corp.* (1981), 95 Ill. App. 3d 111, 419 N.E.2d 608, claiming that these cases directly control the issue of retroactivity and that in both of them retroactive application of the Motor Vehicle Franchise Act was not permitted. While we agree with defendant that *Marquette* and *McAleer* are precedent for the proposition that the Motor Vehicle Franchise Act will not be applied retroactively to impair vested contractual rights and that this judicial antecedent, while not controlling, is applicable to the instant case, we also agree with plaintiff that it would be illogical in light of the Act's declared purpose to presume that the Act may never be applied to prohibit conduct that arises in connection with a pre-existing franchise agreement.

Plaintiff brought the instant action after the effective date of the 1979 Act and prior to the effective date of the 1983 amendment. The unamended statute provided that it is a violation of the Act for an automobile manufacturer to grant an additional franchise in the relevant "market area" previously granted to another franchisee. (Ill. Rev. Stat. 1981, ch. 121½, par. 754(e)(8).) "Market Area" was and continues to be defined by the Act as the franchisee's area of primary responsibility as defined "in its franchise." (Ill. Rev. Stat. 1981, ch. 121½, par. 752(p).) The 1971 direct dealer agreement entered into between plaintiff and defendant defined Fireside's "area of primary responsibility" as follows:

SALES LOCALITY

"DIRECT DEALER will have the non-exclusive right, subject to the provisions of this agreement, to purchase from PLYMOUTH for resale at retail (or to other authorized Plymouth dealers) new Plymouth passenger cars and Plymouth passenger car parts and accessories in the following Sales Locality:
THE AREA COVERED BY THE FOLLOWING POST OFFICE TOWNS, BRANCH POST OFFICES OR SUBSTATIONS

| STATE | COUNTY | TOWNS |
|---|---|---|
| Illinois | Cook | Hoffman Estates |
| Illinois | Du Page | Bloomingdale |
| Illinois | Du Page | Itasca |
| Illinois | Du Page | Medinah |
| Illinois | Du Page | Roselle |
| Illinois | Cook | Schaumburg." |

In September 1983, plaintiff received notice that Chrysler intended to grant to B.G.C.P. an additional franchise of the same line

make in Buffalo Grove. In November 1983, the Illinois Motor Vehicle Franchise Act was amended to include the definition of "relevant market area." (Ill. Rev. Stat., 1983 Supp., ch. 121½, par. 752(q).) Defendant concedes that were plaintiff to plead under the 1983 amendment, because Fireside's "relevant market area" would then include Buffalo Grove, plaintiff could state a cause of action under the Act.

It is clear from the plain language of the 1971 direct dealer agreement that Buffalo Grove is not within plaintiff's "area of primary responsibility" as defined by its franchise. As defendant points out, the only way Fireside would have standing under the Act to prevent a competing dealership from being established in Buffalo Grove is if this court were to retroactively apply the 1983 amendment, which defines "relevant market area" so as to broaden the scope of plaintiff's agreed-on sales locality. Because such application would impair the vested contractual rights of the parties, we decline to do so.

▆▆ A retroactive law has been defined as one that takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability in respect to transactions or considerations already past. (*United States Steel Credit Union v. Knight* (1965), 32 Ill. 2d 138, 204 N.E.2d 4.) The legislature cannot pass a retroactive law that impairs the obligation of contracts or interferes with vested contractual rights. (*Maiter v. Chicago Board of Education* (1980), 82 Ill. 2d 373, 415 N.E.2d 1034, *cert. denied,* 451 U.S. 921, 68 L. Ed. 2d 312, 101 S. Ct. 2000.) A legislative enactment cannot be given retroactive effect in the absence of a clear expression of legislative intent to do so. (*General Motors Corp. v. Industrial Com.* (1975), 62 Ill. 2d 106, 338 N.E.2d 561.) Thus, in absence of express language declaring an amendatory act to be retroactive, it will ordinarily be construed as prospective. *People ex rel. Saam v. Village of Green Oaks* (1965), 55 Ill. App. 2d 51, 204 N.E.2d 149.

In *McAleer Buick-Pontiac Co. v. General Motors Corp.* (1981), 95 Ill. App. 3d 111, 419 N.E.2d 608, this court held that, under the facts of *McAleer,* application of the Illinois Motor Vehicle Franchise Act constituted an unconstitutional impairment of the obligation of contracts in violation of article I, section 10, of the United States Constitution and was therefore retroactive and improper. In reaching its decision, the *McAleer* court reasoned as follows:

> "The rule against giving a statute retroactive application is grounded at least in part upon the constitutional guarantee against the impairment of the obligation of contracts—a guar-

antee that could be violated if a law enacted subsequent to a party's acquiring constitutional rights were applied to that contract. [Citations]. Suffice it to say that requiring GMC to renew—perhaps for years—*a relationship which it had a contractual right not to renew* would be a substantial impairment of GMC's contractual rights, bringing into question the constitutionality of the [Motor Vehicle Franchise] Act." (Emphasis added.) (95 Ill. App. 3d 111, 113-14, 419 N.E.2d 608.)

Similarly, in *Marquette National Bank v. Loftus* (1983), 117 Ill. App. 3d 771, 454 N.E.2d 11, this court held that the Act did not apply to a franchise agreement that pre-existed the statute, although the acts in question occurred after the effective date of the Act. Reasoning that retroactivity is defined in terms of the effect a law would have on vested contractual rights and not in terms of the time when a party happens to assert those rights, the *Marquette* court dismissed the claim alleging a violation of the Motor Vehicle Franchise Act as arising out of conduct governed by the franchise agreement.

■ Here, as in *McAleer* and *Marquette*, plaintiff urges retroactive application of the Act, as amended, to govern conduct that is clearly controlled by the express terms of the written franchise agreement. Application of the Act in this instance therefore impairs vested contractual rights acquired by the parties prior to the effective date of the Act and its amendments. Applying the 1983 definition of "relevant market area" would attach a new disability to Chrysler and B.G.C.P. in respect to the transaction and considerations already passed, namely, the terms and conditions covered by the 1971 franchise agreement. Application of the Motor Vehicle Franchise Act under the facts at bar therefore constitutes an unconstitutional impairment of the obligation of contracts and impermissibly interferes with vested substantive rights. We therefore find that the able trial court properly granted summary judgment in favor of Chrysler and B.G.C.P.

■ By our finding that application of the Motor Vehicle Franchise Act in this particular instance is retroactive and therefore impermissible, we do not, however, suggest that application of the Act to conduct arising from pre-existing franchise agreements will always be improper or retroactive. It is well established that a statute is not retroactive merely because it relates to antecedent events or draws upon antecedent facts for its operation. (*United States Steel Credit Union v. Knight* (1965), 32 Ill. 2d 138, 204 N.E.2d 4.) A retroactive law is one that impairs *vested* rights. A vested right is more than a mere expectation based upon an anticipated continuance of existing law; it must have become a fixed right, complete and consummated.

(*Griffin v. City of North Chicago* (1983), 112 Ill. App. 3d 901, 445 N.E.2d 827.) If an existing law changes by amendment or repeal prior to the vesting of a right, no cause to object arises, and the application of that law to the complained-of conduct is not unconstitutionally retroactive. 112 Ill. App. 3d 901, 445 N.E.2d 827.

Chrysler, in stating that Buffalo Grove is not within Fireside's "area of primary responsibility," looks to the Act's definition of "market area," applies that definition, and concludes that pursuant to that definition, the Act was not violated by the granting of an additional franchise to B.G.C.P. in Buffalo Grove. By doing so, defendant implicitly acknowledges that the Act does apply to the 1971 franchise agreement, but because "market area" is defined in terms of the franchise agreement itself, it neither imposes a new duty nor attaches a new disability to defendant, and application of the term "market area" to the 1971 pre-existing agreement is not retroactive. Similarly, were either of the parties to engage in conduct that constituted an unfair practice under the Act, and said conduct was not governed by the terms of the pre-existing contractual agreement, application of the Act might not impair a vested contractual right and would not then be retroactive. In such instances the prohibited conduct governed by the Act is not "in respect of transactions or considerations already past" (*Marquette National Bank v. Loftus* (1983), 117 Ill. App. 3d 771, 454 N.E.2d 11), but merely relates to antecedent events or draws upon antecedent facts, namely, the pre-existing franchise agreement. (*Sipple v. University of Illinois* (1955), 4 Ill. 2d 593, 123 N.E.2d 722.) Under such circumstances, unlike under the circumstances of *McAleer, Marquette National Bank,* and the instant case, application of the Motor Vehicle Franchise Act may be prospective and therefore proper.

As plaintiff points out, the Illinois legislature, by the declaration of purpose set forth in the Motor Vehicle Franchise Act, has made clear its intent to "prevent frauds, impositions and other abuses upon its citizens" and "to protect and preserve the investments and properties of the citizens of this State." (Ill. Rev. Stat., 1983 Supp., ch. 121½, par. 751.1.) To effectuate this purpose, promote the public interest and welfare, and protect consumers generally, the Act must apply prospectively not only to those that entered into franchise agreements after June 1979, but to any person who engages, directly or indirectly, in business dealings with respect to motor vehicle franchises within the State. (Ill. Rev. Stat. 1981, ch. 121½, par. 753.) To do otherwise would allow those that entered into franchise agreements prior to the effective date of the Act to use those pre-existing

agreements as immunity against the prohibition of unfair competition and practices imposed by the legislature. Pre-existing agreements would then serve to protect not the consuming public, the intended beneficiaries of the Act, but the wrongdoers that perpetrate the very evils which the Motor Vehicle Franchise Act is intended to eradicate.

We realize, however, that such circumstances are not present in the case at bar, and, under these facts, we find that application of the Motor Vehicle Franchise Act would be retroactive and therefore improper. Thus, finding retroactivity to be dispositive of the instant case, we need not reach the constitutional issues raised by defendant.

Accordingly, we affirm the decision of the trial court, granting summary judgment in favor of Chrysler and B.G.C.P.

Affirmed.

JOHNSON and JIGANTI, JJ., concur.