KLEINSCHMIDT, INC., *et al.*, Plaintiffs-Appellants, v. THE COUNTY OF COOK *et al.*, Defendants-Appellees.

Second District    No. 2—96—0769

Opinion filed March 19, 1997.—Rehearing denied May 8, 1997.

Donald T. Morrison and Joseph T. Morrison, both of Morrison & Morrison, P.C., of Waukegan, for appellants.

Jack O'Malley, State's Attorney, of Chicago (Patricia M. Shymanski, Patricia M. Moser, William P. Motto, and Paul A. Castiglione, Assistant State's Attorneys, of counsel), for appellee County of Cook.

Michael J. Waller, State's Attorney, of Waukegan (James R. Carr, Assistant State's Attorney, of counsel), for appellee County of Lake.

Robert J. Harris, of Stein, Ray & Conway, of Chicago, for appellee Corporate 500 Centre Phase 1.

JUSTICE THOMAS delivered the opinion of the court:

The plaintiffs, Kleinschmidt, Inc. (Kleinschmidt), Bank of Waukegan, as trustee under a trust agreement dated November 20, 1986, and known as trust No. 1898, and Harry Gaples, filed this declaratory judgment action against the defendants, the County of Cook (Cook County or the County), the County of Lake, American National Bank and Trust Company of Chicago, as trustee under an agreement dated August 31, 1983, and known as trust No. 59087, and Corporate 500 Centre Phase 1 (Corporate 500), seeking to set aside a conveyance of land to the County as an unconstitutional taking. After the parties filed cross-motions for summary judgment, the trial court granted the defendants' motions for summary judgment. The plaintiffs appeal.

The record reveals that in 1985 Kleinschmidt was a division of SCM Corporation, which owned the beneficial interest in a tract of land that had 276 feet of frontage on the north side of Lake Cook Road east of the Milwaukee/Soo Line railroad tracks. The property was on the Lake County side of the road and was improved with Kleinschmidt's industrial building. The south 276 feet of the frontage was unimproved. Harry Gaples, president of Kleinschmidt, eventually purchased Kleinschmidt and the land in question from SCM Corporation.

In September 1985, Cook County adopted a resolution that authorized improvement of Lake Cook Road. The project consisted of expanding the street and creating a highway underpass at the railroad tracks east of the plaintiffs' property. Between the plaintiffs' property and the railroad tracks to the west was a 37-acre tract of land owned by a land trust in which defendant Corporate 500 held the beneficial interest. The proposed project called for the elimination of Corporate 500's access road off of Lake Cook Road to the Corporate 500 property. Cook County informed the plaintiffs that since Corporate 500's Lake Cook Road entrance was being eliminated as a result of the project, it would be necessary to construct an access road to the east, across the vacant front portion of the plaintiffs'

property. In November and December 1985, Cook County requested the plaintiffs' permission to survey their property for the project. The plaintiffs refused to allow the survey at that time.

On January 18, 1986, Corporate 500 wrote Cook County a letter offering to convey certain easements necessary to complete the project in exchange for acquiring a portion of the plaintiffs' land to build and landscape a new Lake Cook access road. In spring 1986, Corporate 500 offered to buy a portion of the plaintiffs' property to construct the access road. On August 22, 1986, the County was informed that the plaintiffs were unwilling to sell a portion of their property to Corporate 500.

In October 1986, the plaintiffs eventually allowed their land to be surveyed by the County. In August 1987, an acquisition plat was prepared. The parcel to be taken consisted of approximately 38,422 square feet and followed a curvilinear line from the northern most portion of the property running in a southeasterly direction to Lake Cook Road. This plat left part of the plaintiffs' front grass. Gaples, however, did not want to be left with an irregularly shaped remainder, so he requested that the County acquire a rectangular-shaped parcel that ran straight easterly from the northernmost portion of the tract. Pursuant to Gaples' request, Cook County prepared a second plat that conformed to a rectangular configuration. The legal description for the taking of this revised parcel consisted of 59,931 square feet and was referred to as scheme B.

On July 3, 1989, Cook County passed a resolution describing a portion of the plaintiffs' property, tract 21-04, as property "to be taken," noting that it was necessary for the construction of a highway improvement and directing that an agreement be attempted with the owner for the purchase of the property. The resolution further provided that if an agreement could not be reached, then proceedings should be initiated under the eminent domain provisions of the Code of Civil Procedure (735 ILCS 5/7—101 *et seq.* (West 1994)) to determine the amount of compensation to be paid. A negotiation meeting was set for September 12, 1989. On August 25, 1989, Cook County sent the plaintiffs a letter listing the agenda for the meeting. Among the items listed to be discussed at the meeting were "[t]ender of offer for the required right of way" and the "condemnation option."

On September 12, 1989, the County offered Gaples $575,000 for the property. Thereafter, Gaples submitted a counteroffer of $615,000. The parties eventually agreed to a purchase price of $600,000. The closing took place in December 1989, with funds for the purchase coming from the Illinois motor fuel tax fund. To obtain a real estate

tax exemption for the property, the Cook County State's Attorney's office filed an affidavit stating that the property was acquired in lieu of condemnation for construction of a roadway improvement.

After the acquisition of a portion of the plaintiffs' land, the project was delayed and had not begun by 1994. At that time, Cook County was negotiating with Corporate 500 about the acquisition of Corporate 500's entrance from Lake Cook Road immediately west of the portion conveyed by the plaintiffs to Cook County. Corporate 500 was making a claim for damage to the remainder of its property in addition to a claim for the portion of its property the County actually sought for its project.

On July 7, 1994, Cook County and Corporate 500 entered into an agreement in which the County agreed to pay Corporate 500 $312,000 for its land. The County also agreed to convey a portion of tract 21-04 to Corporate 500. Pursuant to the agreement, the County was required to construct the access road and install the necessary signs. The County was also required to perform certain landscaping work in the area surrounding the access road. The plaintiffs learned of the agreement when Corporate 500 applied to the Village of Deerfield for construction permits to landscape and erect fences on the property, asserting the agreement as its title to the property.

On June 20, 1995, the plaintiffs filed their complaint, seeking a declaration that the contract for the conveyance of a portion of tract 21-04 to Corporate 500 was illegal on the grounds that the plaintiffs had conveyed the property to the County under the threat of condemnation, so that the County thereby was exercising the constitutional right of eminent domain, making it constitutionally impermissible for the County to subsequently convey the land to a private party such as Corporate 500. The defendants filed motions for summary judgment on the ground that a constitutional "taking" did not occur since the plaintiffs voluntarily conveyed their property to the County and a petition for condemnation was not filed. The plaintiffs filed a cross-motion for summary judgment. The trial court granted the defendants' motions for summary judgment and denied the plaintiffs' cross-motion on the ground that, where the interested parties agree to an amount of compensation and no condemnation petition is filed, no taking occurs.

On appeal, the plaintiffs argue that its conveyance of tract 21-04 to the County constituted a "taking" in the constitutional sense which rendered the County's subsequent conveyance of a portion of that tract to Corporate 500 violative of the requirement that land taken be devoted to a "public use."

■ Summary judgment is proper when the pleadings, depositions,

and affidavits on file demonstrate that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2—1005(c) (West 1994). As a court reviewing the propriety of an order granting summary judgment, we conduct a *de novo* review. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992).

In granting the defendants' motions for summary judgment, the trial court relied primarily on *Patrick Media Group, Inc. v. Du Page Water Comm'n*, 258 Ill. App. 3d 1068 (1994). In *Patrick*, the commission needed part of the B&O Railroad's land to complete its project to supply Lake Michigan drinking water to the residents of Du Page County. The commission began negotiations with the railroad for purchase of the land. At that time, Patrick Media Group (PMG) had lease agreements with the railroad which allowed it to maintain three billboards on the property. The leases provided that they were subject to termination upon one month's notice by either party. The commission eventually made and the railroad eventually accepted a written purchase offer with the conveyance subject to the existing leases on the property. After the purchase was consummated, the commission terminated PMG's leases. Thereafter, PMG filed suit against the commission contending that its acquisition of the property was a "taking" requiring the payment of just compensation.

█ In deciding the issue of whether the commission's acquisition of the property from the railroad by means of a purchase agreement rather than a condemnation proceeding constituted a taking, the court noted:

"[T]he eminent domain act provides for the taking of property where 'the compensation to be paid *** cannot be agreed upon by the parties interested.' [Citations.] What necessarily follows from this is that, *where the interested parties do agree to an amount of compensation, no taking of property by the government occurs.* [(Emphasis added.)] Indeed, it is generally agreed by the courts of this State that, under the act, the exercise of the right or power of eminent domain by an authority seeking to appropriate private property may not occur *until* the authority has first attempted to reach an agreement with the owner on the amount of compensation. [(Emphasis in original.)] [Citations.] In *Department of Transportation v. Walker* (1980), 80 Ill. App. 3d 1039, 400 N.E.2d 956, the court stated that 'an attempt at agreement must be both bona fide and made in good faith by the acquiring authority *before the condemnation proceedings may be initiated.*' (Emphasis added.) [Citation.] We find it significant that our supreme court in *Harrison-Halsted* characterized the acquiring authority and property owner as 'contracting parties' in the negotiation stages of

their relationship and as 'antagonists' only once a failure to agree upon compensation had become evident and it became necessary for the parties to go to court." *Patrick Media Group, Inc.*, 258 Ill. App. 3d at 1075-76.

The plaintiffs argue that *Patrick* is distinguishable from the present case because in *Patrick* there was no threat of condemnation while in the present case the County had passed a resolution stating that the plaintiffs' property was to be taken by reaching an agreement for its sale and, if no agreement could be reached, then by eminent domain proceedings.

Despite the plaintiffs' assertions, we do not find *Patrick* to be distinguishable so as to preclude its application to the facts of the case at bar. In that regard, we recognize that the *Patrick* court did respond to the plaintiffs' reliance on the out-of-state authority of *Lanning v. City of Monterey*, 181 Cal. App. 3d 352, 226 Cal. Rptr. 258 (1986), by noting that in *Lanning* the city and railroad expressly agreed in their purchase contract that the acquisition of the property was the essential equivalent of the city's exercise of its power of eminent domain, while in the case before it there was no threat of a condemnation proceeding. However, we do not find the *Patrick* court's discussion of *Lanning* to detract from its finding that, where parties agree to compensation so as to forestall a condemnation proceeding, no taking occurs. *Patrick Media Group, Inc.*, 258 Ill. App. 3d at 1075.

■ The taking of property in the constitutional sense is accomplished only by the filing of a petition, the ascertainment of value, and the payment of just compensation. *Towne v. Town of Libertyville*, 190 Ill. App. 3d 563, 568 (1989); *Citizens Utilities Co. v. Metropolitan Sanitary District of Greater Chicago*, 25 Ill. App. 3d 252, 255 (1974). As the courts in *Patrick* and *City of Chicago v. Harrison-Halsted Building Corp.*, 11 Ill. 2d 431 (1957), noted, the parties are considered contracting parties in the negotiation stages of their relationship and as antagonists only after the parties have failed to agree upon compensation and are forced to go to court for condemnation proceedings. *Patrick Media Group, Inc.*, 258 Ill. App. 3d at 1076; *Harrison-Halsted Building Corp.*, 11 Ill. 2d at 434. This is consistent with the statute that provides for a taking of property where the compensation cannot be agreed upon by the interested parties. See 735 ILCS 5/7—102 (West 1994).

In *Mattion v. Trustees of Schools of Township 41*, 2 Ill. App. 3d 1035 (1971), the defendant school board adopted a resolution to condemn property owned by the plaintiffs. After the parties were unable to agree on compensation, the school board filed a petition for condemnation. During the pendency of the condemnation suit, the

parties agreed on a purchase price, and the plaintiffs thereafter executed a warranty deed conveying the land to the school board. Five years later, the school board sold the land to a private party. The plaintiffs filed suit, alleging that the defendant wrongfully used its power of eminent domain to coerce the plaintiffs to execute a warranty deed for the land. In finding that the land in question was not acquired through condemnation proceedings, the court noted that the plaintiffs were not coerced into selling the property. *Mattion*, 2 Ill. App. 3d at 1039. We find *Mattion* instructive because it stands for the proposition that a threat of condemnation does not amount to coercion that would serve to vitiate the instant purchase contract between the plaintiffs and Cook County.

A similar result was reached in *Mills v. Forest Preserve District*, 345 Ill. 503 (1931). There, the plaintiff agreed to sell his property to the defendant district when the district threatened to commence condemnation proceedings to acquire the property. Two years later, the district accepted the plaintiff's offer to sell the land for $600 per acre. The contract offer made by the plaintiff noted that "[t]his is a compromise offer made to avoid litigation." The plaintiff later filed suit against the district, alleging that it illegally took his land and that he entered the agreement under duress and the threat of condemnation. Despite the fact that the district did not even possess the authority to condemn the land in question, our supreme court found that there was no duress or coercion. The court refused to rescind the deed and held that the plaintiff "got what he bargained for, and he cannot, under guise of the protection of public interest, rue his bargain. He has no private interest in the subject matter." *Mills*, 345 Ill. at 518. In both *Mills* and the present case, the property owners voluntarily negotiated a purchase price, consummated their deal, and received the benefit of their bargain.

In support of their position that there was a taking of property in the case *sub judice*, the plaintiffs rely on certain language from *Griffin v. City of North Chicago*, 112 Ill. App. 3d 901 (1983). There, Griffin owned a parcel of land situated in the City of North Chicago and designated by the forest preserve district for acquisition pursuant to a 1975 resolution of the forest preserve. After negotiations, Griffin and the forest preserve entered into a contract for the purchase of the property. The contract contained a rider subjecting the deal to the approval of the City of North Chicago as required by a newly passed amendment to a state statute. The amendment provided that the forest preserve could not condemn *or purchase* property without the approval of the city. When the city failed to consent to the purchase, the forest preserve and Griffin filed suit seeking a declaration that the amendment was inapplicable.

The court in *Griffin* found that the amendment was applicable and that it did not involve retroactive application since the purchase agreement was signed after the effective date of the amendment. The court then addressed the forest preserve's claim that it had a vested right in the land prior to the amendment by virtue of the passage of its acquisition resolution. The court rejected that claim by noting that "[e]ntering into negotiations for the purchase, and filing of a petition to condemn, vests no interest in land." *Griffin*, 112 Ill. App. 3d at 905. The court in *dicta* and without citation to authority then stated that, "[s]ince no taking occurs until the execution of a purchase agreement or conclusion of eminent domain proceedings, no rights to property are transferred until that date." *Griffin*, 112 Ill. App. 3d at 906. It is this statement that the instant plaintiffs rely on for their claim that a taking occurred when the parties in the present case executed the purchase contract.

■ We cannot accept the plaintiffs' reliance on this language as dispositive of the outcome here. The court seemed to mesh the issues of whether a taking had occurred with whether the forest preserve had a vested right in the property. Clearly a party would have a vested right in property upon obtaining a fully executed purchase agreement. However, it does not follow that the execution of a purchase agreement necessarily constitutes a taking. It is clear from the facts of *Griffin* that the court did not consider this precise issue.

We find *Patrick*, *Mattion*, and *Mills* persuasive and conclude that the trial court correctly determined that, since the parties agreed to the amount of compensation precluding the necessity of an eminent domain proceeding, no taking occurred. Accordingly, we hold that the trial court properly granted the defendants' motions for summary judgment and properly denied the plaintiffs' cross-motion for summary judgment.

For the foregoing reasons, the judgment of the circuit court of Lake County is affirmed. Our resolution of the foregoing issue renders moot the remaining issues raised by the parties.

Affirmed.

GEIGER, P.J., and COLWELL, J., concur.