2024 IL App (1st) 232411-U

THIRD DIVISION
November 6, 2024

No. 1-23-2411

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

**IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT**

| | |
|---|---|
| GREAT TRUE VINE M.B. CHURCH, | ) Appeal from the |
| | ) Circuit Court of |
| Plaintiff-Appellee, | ) Cook County |
| | ) |
| v. | ) No. 21 L 004263 |
| | ) |
| CORPORATION OF CAPITAL, INC., | ) Honorable |
| | ) Daniel Kubasiak, |
| Defendant-Appellant. | ) Judge, Presiding |

JUSTICE D.B. WALKER delivered the judgment of the court.
Presiding Justice Lampkin and Justice Reyes concurred with the judgment.

**ORDER**

¶ 1     *Held*: We affirm the trial court's denial of defendant's motion for summary judgment but reverse the court's grant of summary judgment in favor of plaintiff where questions of fact exist regarding plaintiff's $37,000 payment to defendant.

¶ 2     Plaintiff Great True Vine M.B. Church filed a complaint against defendant Corporation of Capital, Inc. seeking the return of $37,000 plaintiff deposited as earnest money towards the purchase of defendant's property. The trial court granted summary judgment in favor of plaintiff and denied defendant's motion for summary judgment. On appeal, defendant contends that the trial court erred in 1) granting summary judgment in favor of plaintiff and denying defendant's

motion for summary judgment where plaintiff failed to perform under the new contract, and 2) a question of fact exists on whether the contract provided for the forfeiture of plaintiff's earnest money. For the following reasons, we affirm the denial of defendant's motion but reverse the grant of summary judgment in favor of plaintiff and remand for further proceedings.

¶ 3                                I. BACKGROUND

¶ 4        On June 14, 2018, the parties executed a real estate contract for the purchase of a church located at 4517 St. Charles in Bellwood, Illinois. The contract was signed by John Collins as pastor and president of Great True Vine M.B. Church, and by Joseph Khoshabe as president of defendant, the owner of the property. The contract had a purchase price of $699,000 with an "Initial Earnest Money" amount of $1,000. Plaintiff tendered $1,000 as required by the contract. The contract provided a closing date of August 31, 2018.

¶ 5        The contract was "contingent upon the ability of Buyer to secure within 30 days of the Date of Acceptance, a firm written commitment for a loan evidenced by a note to be secured by a mortgage or trust deed *** in the amount of $500000." The contract further provided that:

>        "If Buyer makes a good faith effort but is unable to obtain a commitment for the mortgage
>        loan contemplated herein, Buyer shall so notify Seller in writing within the time specified
>        in this Paragraph. IF SELLER IS NOT SO NOTIFIED WITHIN SUCH TIME PERIOD,
>        BUYER SHALL FOR ALL PURPOSES BE DEEMED TO HAVE SECURED SUCH
>        COMMITMENT OR TO HAVE AGREED TO PURCHASE THE REAL ESTATE
>        WITHOUT MORTGAGE FINANCING OR BASED UPON THE MORTGAGE
>        COMMITMENT ACTUALLY OBTAINED." (Emphasis in original.)

¶ 6        Relevant to this appeal, the contract also contained the following provision:

"If, prior to delivery of the deed, the Real Estate shall be destroyed or materially damaged by fire or other casualty ***, then Buyer shall have the option of either terminating this Contract (and receiving a refund of earnest money) or accepting the Real Estate as damaged or destroyed, together with the proceeds of *** any insurance payable as a result of the destruction or damage, which gross proceeds Seller agrees to assign to Buyer and deliver to Buyer at closing. Seller shall not be obligated to repair or replace damaged improvements."

¶ 7     On June 28, 2018, plaintiff's mortgage broker obtained a "Financing Proposal Commitment" through American Investment Group, and on July 18, 2018, Ministry Partners provided a "Conditional Letter of Interest" to provide funding for plaintiff's purchase.

¶ 8     On July 30, 2018, the contracted property was substantially damaged by fire. The parties agreed to renegotiate the purchase price of the property due to the fire damage. On November 15, 2018, plaintiff refinanced property it owned at 6919 S. Justine[1] and received proceeds. Plaintiff tendered $37,000 of the proceeds to defendant.

¶ 9     During renegotiations, the parties disagreed on terms of the transaction. Laurence Woznicki, the agent for both parties in this transaction, sent an email on September 5, 2020 to Khoshabe and Collins "to bring a finality to a potential transaction that has been in a 'limbo state' for way too long." Relevant here, Woznicki wrote:

"[b]oth sides have expressed an interest to consummate a deal, however that has not been achieved thus far. If there is a deal to be had it is imperative that it happens sooner rather

---

[1] The record does not indicate in which city this property is located.

than later. However, if no deal is forthcoming we must assess that as well and determine how/when the earnest money will be disbursed to the purchaser."

¶ 10    The email also listed the "wants and expectations" of both parties regarding the transaction. According to Woznicki, Collins and plaintiff wanted "time to proceed with the application/underwriting in order to secure a $550,000 mortgage," and plaintiff was "[w]illing to pay up to $550,000 for 4517 St. Charles, Bellwood, IL." Khoshabe and defendant wanted "$550,000 for the property," but wanted plaintiff "to increase earnest monies to $50,000, which will be nonrefundable [if] mortgage is not secured within 60 days of executing a new purchase and sale agreement."

¶ 11    In a subsequent email to Woznicki, Collins stated that he believed "we can get this deal done. As you can remember we had two loan commitments from them before. [W]e are committed to continue but not with a non-refundable earnest money deposit."

¶ 12    Collins subsequently informed Khoshabe, in an undated letter, that with respect to the Bellwood property, "the Contract is null and void and all earnest money in the amount of $38,000 [should] be returned" to plaintiff. The letter stated that after the "property caught fire," plaintiff had waited for "a meeting of the mind on purchasing the property." The letter also accused Khoshabe of "chang[ing] his mind" on the $550,000 purchase price by demanding an additional $85,000. Collins wrote that "we are not willing to pay that price and take on the repairs that was [*sic*] left with the fire."

¶ 13    On April 26, 2021, plaintiff filed a complaint for breach of contract against defendant. Plaintiff alleged that after the parties executed the sales contact for the Bellwood property, the property "was substantially damaged due to a fire." Plaintiff alleged that while waiting for defendant to resolve its insurance claim, plaintiff refinanced one of its buildings and tendered

$37,000 of the proceeds to defendant. The complaint alleged that although the parties agreed on a new purchase price of $550,000, defendant breached its duties when it "failed to abide by the new agreed price." Plaintiff requested a judgment in the amount of $37,000 plus costs.[2]

¶ 14    Plaintiff filed a motion for summary judgment, and defendant filed a response. On September 15, 2022, the trial court denied plaintiff's summary judgment motion, finding that questions of material fact existed regarding plaintiff's performance of its obligations under the contract. Specifically, the trial court found that plaintiff "has not established that it had a 'firm written commitment for a loan' or that it had the ability to purchase the property for $550,000 without mortgage financing."

¶ 15    After the parties conducted further discovery, defendant filed a motion for summary judgment. Therein, defendant alleged that the parties "agreed to reduce the purchase price of the Property from $699,000 to $550,000." Defendant alleged that plaintiff did not obtain a "firm commitment for a loan" as required by the sales contract. Rather, plaintiff only received a financing proposal and a conditional letter of interest. Defendant further alleged that the fire at the property did not allow plaintiff to cancel the contract because plaintiff "chose to keep the Contract in place" with a reduced price of $550,000. Defendant alleged that plaintiff breached the contract by failing to obtain a commitment to lend and refusing to close on the transaction at the modified price. Defendant argued that since plaintiff could not establish that it performed under the contract, summary judgment in defendant's favor was appropriate.

¶ 16    Plaintiff filed a "Response to the Defendant's Motion for Summary Judgment." Plaintiff asserted that it had negotiated with several lenders regarding a loan to purchase the property and

---

[2] There is no explanation for why plaintiff requested a judgment for $37,000 rather than $38,000.

"narrowed" the choices to two lenders. One lender told plaintiff that it could get a better interest rate on the loan if plaintiff "put up a larger down payment." As a result, plaintiff tendered an additional $37,000 in earnest money to increase its down payment at closing. After the property was damaged by fire, plaintiff tried to negotiate a new agreement for purchase of the damaged property. Although defendant initially agreed to a sales price of $550,000, defendant "later recanted and demanded more money and other conditions." As a result, plaintiff "refused Defendant's counteroffer, terminated the contract, and demanded a return of [its] earnest money."

¶ 17    In its response, plaintiff argued that summary judgment in favor of defendant was not warranted because plaintiff provided "an arguable factual basis for potential recovery" under the original contract. Plaintiff established its performance under the contract by tendering the required $1,000 in earnest money. Plaintiff also negotiated with a lender to provide a loan with a better interest rate if plaintiff agreed to increase its down payment on the property by $37,000. Defendant agreed to allow plaintiff to increase its earnest money to meet the lender's requirement. Plaintiff then tendered a check for $37,000 to defendant.

¶ 18    Plaintiff also argued that it did not breach any new contract because there was no agreement between the parties obligating plaintiff to purchase the property for $550,000. Instead, defendant breached the original contract by failing to return the earnest money after plaintiff canceled the contract. Plaintiff requested that the trial court deny defendant's summary judgment motion "and order the Defendant to return the Plaintiff's earnest money."

¶ 19    Khoshabe and Collins submitted affidavits in connection with the proceedings.

¶ 20    In his affidavit, Khoshabe stated that plaintiff and defendant "entered into a Commercial Sales Contract" on June 14, 2018 for the purchase of the Bellwood property for $699,000.

Khoshabe stated that Collins was not only president of the Church, but he was also a real estate broker licensed in Illinois.

¶ 21    Khoshabe stated that on July 30, 2018, the property was "partially damaged" by fire. He contacted Collins and offered to cancel the sales contract and return plaintiff's earnest money of $1,000. According to Khoshabe, Collins refused to cancel the contract and stated that plaintiff wanted to purchase the property. Khoshabe never told Collins that insurance proceeds would be used to repair and restore the property to its original condition.

¶ 22    In the beginning of November 2018, "with no progress being made by the Church to purchase the Property and with insufficient and untimely progress being made with regards to [defendant's] insurance claim," Khoshabe told Collins that he was contemplating the sale of the property in "as is" condition. Although plaintiff had not yet secured funds to purchase the property, Collins informed Khoshabe that plaintiff wanted the property. According to Khoshabe, plaintiff agreed to pay defendant a nonrefundable fee for the exclusive right of first refusal and option to purchase the property. The funds would be applied to the purchase price of the property, but if plaintiff failed to proceed with the purchase, the fee would be forfeited. Khoshabe stated that the parties agreed to a nonrefundable fee of $37,000, which plaintiff paid. The parties also agreed on a new purchase price of $550,000.

¶ 23    In June or July of 2020, after no progress on the purchase, Khoshabe met with Collins and his wife to discuss the situation. He informed them that he "could no longer hold the [p]roperty" and demanded that plaintiff "perform under the parties' revised agreement." Although Collins told Khoshabe that he was still interested in purchasing the property for $550,000, Khoshabe did not hear from him again. Khoshabe believed that plaintiff had "waived and relinquished any right to

the $1000 earnest money payment or the nonrefundable $37,000 fee paid for the exclusive option to purchase the Property" because it failed to perform under the revised contract.

¶ 24 In his affidavit, Collins agreed that plaintiff had entered a contract to purchase the Bellwood property for $699,000 on June 14, 2018, and tendered $1,000 in earnest money pursuant to the contract. Collins stated that plaintiff received "an approval letter" from "American Investors [*sic*] Group Inc." on June 28, 2018, but found the rate and fees "were too high." In July 2018, plaintiff received "another approval from Ministry Partners with a lower rate and fees." Collins stated that Khoshabe refinanced plaintiff's property at 6919 S. Justine "to increase [plaintiff's] Earnest and $37,000 was accepted by [defendant.]" [3]

¶ 25 Collins stated that, prior to the closing date, the property was damaged by fire. According to Collins, defendant "requested a closing date extension in order to wait on the Insurance adjuster to finish their investigation to repair the damage." Collins agreed to the extension. As plaintiff waited, Collins contacted Woznicki about negotiating "a new agreement for now damaged property at a lower price." On September 5, 2020, Woznicki emailed the parties regarding the new agreement. Collins stated that Khoshabe "refused to sign a new agreement, so [Collins] cancelled the contract due to the substantially fire damaged property and demanded the earnest money [be] returned." Defendant refused to return the earnest money.

¶ 26 After reviewing the parties' filings and considering their oral arguments, the trial court denied defendant's motion for summary judgment and, reconsidering its order of September 15, 2022, granted summary judgment in favor of plaintiff. The court found that plaintiff was not obligated under an agreement to provide an additional $37,000 to defendant. Rather, "[i]t is clear

---

[3] The record contains no information as to whether Khoshabe himself or another entity provided the funds.

from the record that Plaintiff provided the additional $37,000 in order to obtain additional financing to be able to purchase the property." The court found nothing in the original contract stating that plaintiff would forfeit the $37,000 if the purchase did not occur. The trial court entered judgment in the amount of $37,000 in favor of plaintiff.

¶ 27    Defendant filed a motion to reconsider, which the trial court denied. The court found that the motion was "essentially an attempt to re-argue [defendant's] summary judgment motion," and failed to show that the court misapplied the law. Defendant filed this appeal.

¶ 28                                II. ANALYSIS

¶ 29    Defendant contends that the trial court erred in granting summary judgment in favor of plaintiff, and denying defendant's motion for summary judgment, where plaintiff failed to perform under the revised contract.[4]

¶ 30    In general, the denial of summary judgment is not appealable because it is interlocutory in nature. *Clark v. Children's Memorial Hospital*, 2011 IL 108656, ¶ 119.  An exception to this rule exists, however, when the parties have filed cross-motions for summary judgment and the court grants one party's motion and denies the other motion. *Id*. In this case, plaintiff filed a "Response to the Defendant's Motion for Summary Judgment" rather than a cross-motion for summary judgment. Although plaintiff titled the document a "Response," plaintiff argued therein for the return of its earnest money and requested judgment in its favor. As such, plaintiff essentially filed a cross-motion for summary judgment. See  *In re Marriage of Wendy S. & George D.*, 2020 IL App (1st) 191661, ¶ 18 (finding that "[i]t is the substance of a filing, not the title, that controls").

---

[4] Plaintiff has not filed a brief in this matter. Therefore, we consider the appeal on defendant's brief only, pursuant to *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976) (finding that where the record is simple and the claimed errors are such that the reviewing court can make a determination without the aid of appellee's brief, the court should decide the merits of the appeal).

Since the parties filed cross-motions for summary judgment, we can review defendant's contention that the trial court erred in denying its motion for summary judgment. *In re Estate of Funk*, 221 Ill. 2d 30, 85 (2006).

¶ 31 Summary judgment is proper where the pleadings, depositions, and affidavits on file show that no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. *Kleinschmidt, Inc. v. County of Cook*, 287 Ill. App. 3d 312, 315–16 (1997). Generally, when parties file cross-motions for summary judgment, they agree that only questions of law are presented. *Pielet v. Pielet*, 2012 IL 112064, ¶ 28. However, the mere fact that the parties have filed cross-motions for summary judgment does not mean there are no issues of fact. *Id*. Accordingly, the reviewing court may find that a question of material fact exists sufficient to preclude the entry of summary judgment. *Kalis v. Colgate–Palmolive Co.*, 357 Ill. App. 3d 172, 174 (2005). We review the trial court's determination on a motion for summary judgment *de novo*. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992).

¶ 32 Defendant contends that the trial court erred in denying its motion for summary judgment and granting plaintiff's motion where the parties agreed to a new purchase price of $550,000 for the fire-damaged property, and plaintiff failed to obtain a firm commitment for financing as required under the contract.

¶ 33 Under the original contract, plaintiff had two options if the property was damaged prior to closing. Plaintiff could either terminate the contract and receive a refund of its earnest money, or accept the property as damaged or destroyed, "together with the proceeds of *** any insurance payable as a result of the destruction or damage," which defendant would deliver to plaintiff at closing. Instead of exercising these options, plaintiff and defendant agreed to renegotiate the purchase price and other terms. Parties to a contract may, by mutual assent, modify the existing

contract if the modification does not violate law or public policy. *Schwinder v. Austin Bank of Chicago*, 348 Ill. App. 3d 461, 468 (2004).

¶ 34    A valid modification of a contract requires all the elements of a valid contract including an offer, acceptance, and consideration. *Id*. Moreover, "no contract can be modified in *ex parte* fashion by one of the contracting parties without the knowledge and consent" of the other party to the contract. *Id*. at 469. Therefore, mutual assent of the parties is a requisite element when modifying a contract. *Id*. "[A] contract modified by the parties creates a new single contract consisting of so many of the terms of the prior contract as the parties have not agreed to change, in addition to the new terms on which they have agreed." *Id.* When parties modify a contract, any claim to enforce the contract must be brought on the modified agreement. *Id.* Therefore, before we consider whether plaintiff performed under the new contract, we must determine whether a new agreement was formed between the parties and, if so, the terms of that agreement.

¶ 35    " '[P]rice is an essential ingredient of every contract for the transfer of property and must be sufficiently definite and certain or capable of being ascertained from the contract between the parties,' " for the contract to be enforceable. *Universal Scrap Metals, Inc. v. J. Sandman & Sons, Inc*., 337 Ill. App. 3d 501, 505 (2003) quoting *Miller v. Bloomberg*, 26 Ill. App. 3d 18, 19 (1975). The record shows that although the parties may have initially agreed to modify the purchase price from $699,000 to $550,000, there is a question of fact as to whether they agreed on a final purchase price. Khoshabe asserted in his affidavit that the parties agreed to a new purchase price of $550,000, but Collins stated in his affidavit that Khoshabe "refused to sign a new agreement" at that price. According to Collins, Khoshabe made a counteroffer by requesting an additional $85,000 for the property, which plaintiff refused to pay.

¶ 36    Questions of material fact also exist regarding the parties' obligations in the event they

could not agree on a new price. In his affidavit, Collins merely concluded that because Khoshabe did not sign the new agreement, plaintiff could cancel the transaction pursuant to the terms in the original contract. There is no evidence in the record to support his statement. Affidavits filed in opposition to summary judgment motions must consist of evidentiary facts as opposed to conclusions. *Perona v. Volkswagen of America, Inc.*, 2014 IL App (1st) 130748, ¶ 51.

¶ 37    Defendant's motion for summary judgment relied on the existence of a new contract to purchase the damaged Bellwood property for $550,000, but questions of material fact exist regarding whether the parties agreed to a new price for the property or to other terms affecting their rights under the original contract if they could not agree on a modified price. We find that the trial court properly denied defendant's motion for summary judgment.

¶ 38    We further find that the trial court improperly granted summary judgment in favor of plaintiff for $37,000. As the trial court noted, plaintiff's $37,000 payment was not required by the parties' original contract. That contract required only an earnest money payment of $1,000. The parties disagree, however, on their intent regarding the subsequent $37,000 payment.

¶ 39    Khoshabe asserted in his affidavit that the payment was a nonrefundable fee. He stated that plaintiff agreed to pay $37,000 for the exclusive right of first refusal and option to purchase the property. According to Khoshabe, they agreed that the funds would be applied to the purchase price of the property but if plaintiff did not proceed with the purchase, the fee would be forfeited. Collins, however, viewed the $37,000 payment as simply additional earnest money. He alleged that plaintiff could get a better interest rate on the loan if plaintiff "put up a larger down payment." As a result, plaintiff tendered an additional $37,000 in earnest money to increase its down payment at closing. In his affidavit, Collins stated that Khoshabe refinanced one of plaintiff's other properties so that plaintiff could provide the additional $37,000 earnest money required by the

lender. Where affidavits submitted in support of motions for summary judgment contradict one another on a central issue, a question of fact exists, and summary judgment is inappropriate. *Progressive Insurance Co. v. Universal Casualty Co.*, 347 Ill. App. 3d 10, 23 (2004).

¶ 40                                          III. CONCLUSION

¶ 41     For the foregoing reasons, we affirm the trial court's denial of defendant's motion for summary judgment and reverse the court's grant of summary judgment in favor of plaintiff. The cause is remanded for further proceedings.

¶ 42     Affirmed in part and reversed in part. Cause remanded.